599 So.2d 456 (1992)
Mildred Helen CURRIER, Plaintiff-Appellee,
v.
Jerry Lynn CURRIER, Defendant-Appellant.
No. 23,530-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
*457 C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for plaintiff-appellee.
Samuel P. Love, Jr., Shreveport, for defendant-appellant.
Before SEXTON, HIGHTOWER and VICTORY, JJ.
HIGHTOWER, Judge.
A former husband appeals a judgment of the district court awarding his ex-wife alimony of $450 monthly. We affirm.

BACKGROUND
After marrying in January 1969, Mildred and Jerry Currier lived together in Caddo Parish. During their union, they had one son, age 19 at the time of trial. Sometime in 1985, the husband left home and the couple never reconciled. Finally, on March 13, 1991, pursuant to LSA-C.C. Art. 103, the former wife petitioned for divorce premised upon more than one year of separation without reconciliation. She also sought alimony, and an interim order granted her the amount of $150 per week pendente lite.
At the May 9, 1991 trial on the merits, the only contested issues concerned the wife's entitlement to, and the amount of, permanent alimony; neither party challenged the granting of a divorce. In attempting to defeat the support demand, Mr. Currier maintained that several aspects of his spouse's conduct reflected her "fault": overuse of medication; frequent engagement in arguments; frequent accusations of infidelity; inadequate sexual responsiveness; and, post-separation adultery. On the other hand, Mrs. Currier maintained that her husband left home without any reason and, despite her pleas, would not return.
After a full day of testimony, the trial judge took the case under advisement. Subsequently, with written reasons, he rendered a judgment of absolute divorce, found the former wife to be without fault, and granted her $450 monthly in permanent alimony. This appeal, directed at the award of spousal support, ensued.

DISCUSSION

Alimony-Barring Fault
Of course, under LSA-C.C. Art. 112, a spouse seeking permanent alimony must be without fault, and the burden of proof is upon the claimant. Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Taylor v. Taylor, 579 So.2d 1142 (La.App. 2d Cir. 1991); Green v. Green, 567 So.2d 139 (La. App. 2d Cir.1990).
Before the recent codal revisions pertaining to dissolution of marriages (Acts 1990, Nos. 1008, 1009), and beginning with Adams v. Adams, 389 So.2d 381 (La.1980), the Louisiana Supreme Court defined alimony preclusive "fault" to be synonymous with the grounds for separation (then LSA-C.C. Art. 138) and divorce (then LSA-C.C. Art. 139). Nonetheless, Act No. 1009 of 1990 repealed Article 138 of the Civil Code, while amending and redesignating Article *458 139 as Article 103. Currently, as causes for immediate divorce, the latter provision lists nothing other than adultery and imprisonment for a felony. Reading Adams in its strictest sense, then, would mean that only these two categories of misconduct could deprive a spouse of permanent alimony.
Counterpoising such a limited construction of "fault," however, is the broader meaning originally given that term by the Supreme Court in Pearce v. Pearce, 348 So.2d 75 (La.1977):
We have held that, under this statute [LSA-C.C. Art. 160, now LSA-C.C. Art. 112] respecting an award of alimony to a wife without "fault," the word "fault" contemplates conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities.... To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. [Citations omitted].
Such "marital duties and responsibilities," of which the Supreme Court speaks, originate in Article 98 of the Civil Code. Irrespective of the abovementioned revisions, a spouse's obligations of fidelity, support and assistance have remained the same.
It is also significant that the 1990 marriage dissolution revisions merely renumbered, and did not alter, the post-divorce alimony provisions. Thus, we can infer that the lawmakers intended no change in the alimony-fault scheme. Indeed, our brethren in the Fifth Circuit have recently concluded that "fault," for purposes of alimony preclusion, continues to include the Article 138 grounds. See Hornsby v. Hornsby, 592 So.2d 508 (La. App. 5th Cir.1991).
However, under any of these broad or limited definitions, the facts found by the trial court do not constitute alimony-barring fault. And, unless clearly wrong, such factual determinations cannot be disturbed on appeal. Pearce, supra; Taylor, supra; Green, supra; Thibodeaux v. Thibodeaux, 525 So.2d 69 (La.App. 3d Cir. 1988). Indeed, inasmuch as domestic relations issues largely turn on evaluations of witness credibility, a trial judge perforce should be vested with great discretion in such matters. Taylor, supra. In written reasons that noted Mr. Currier's understatement of his income, the trial court resolved all factual conflicts in favor of Mrs. Currier, terming her very believable and credible.
The defendant husband averred that his spouse took an inordinate number of pain relievers and other pills. In response, Mrs. Currier explained that all of her medications served to treat various sinus and ulcer related ailments. The trial judge rejected Mr. Currier's contentions on the issue, and we cannot say that determination is clearly wrong.
Both spouses agreed that their almost daily arguments centered on Mrs. Currier's complaints about her husband's drinking and late hours. After finding that Mr. Currier abusively consumed alcohol for a significant period prior to the physical separation, and after expressly accepting the plaintiff's testimony that her spouse rarely came home before 11:30 p.m., the trial court concluded that the wife's conduct did not amount to marital fault. A party should not be deprived of permanent alimony simply because he or she is not totally blameless in the marital discord. Pearce, supra; Taylor, supra. Although we are not called to determine Mr. Currier's fault in the dissolution of the marriage, it is clear that his actions, in large part, precipitated these altercations. Further, we have held that a justifiable, reasonable response by one spouse to the other's initial fault does not constitute fault. See Wynn v. Wynn, 513 So.2d 489 (La.App. 2d Cir.1987); Honley v. Honley, 416 So.2d 631 (La.App. 2d Cir.1982); Vail v. Vail, 390 So.2d 978 (La.App. 2d Cir.1980).
So too, the quarrels frequently concerned Mrs. Currier's accusations of infidelity, directed at her husband. The former wife explained that, notwithstanding an absence of proof of such infractions, she believed extramarital activity possibly could have been a reason for her spouse's continued unexplained absences, "sometimes for two *459 days." Again, the trial court found her actions did not rise to a level of severity that would reflect marital fault. Cf. Adams, supra; Thibodeaux, supra.
According to Mr. Currier, long periods of time would elapse between sexual encounters with his wife, as she often feigned illness. Though persistent, unreasonable denial of sexual intercourse may constitute cruel treatment, Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980); Dean v. Dean, 579 So.2d 1124 (La.App. 2d Cir. 1991), writ denied, 584 So.2d 683 (La.1991), Mrs. Currier, the more credible spouse, explained that she only refused such contact on evenings of her spouse's intoxication.
Finally, the husband alleged that, after their physical separation, his wife engaged in an adulterous relationship. Mrs. Currier admitted to dating an individual for about eight months, but denied having sexual intercourse with him. To some extent, the adult son corroborated his mother's testimony. Thus, no marital fault has been shown in this respect. Cf. Stears v. Stears, 569 So.2d 220 (La.App. 1st Cir. 1990).
Simply stated, in view of the trial court's credibility determinations, the record adequately supports the plaintiff wife's alimony entitlement.

Amount of Alimony
LSA-C.C. Art. 112 provides that when a husband or wife has not been at fault and does not possess sufficient means for support, the court may award permanent periodic alimony. The amount necessary for maintenance of a divorced spouse is to be determined by the facts and circumstances of each particular case, and the trial judge is vested with considerable discretion. Pearce, supra.
Testimony reveals that Mrs. Currier currently resides with her mother and intends to continue doing so. Thus, she is able to share a majority of her expenses. After finding the monthly expenditures listed in the wife's affidavit to be quite conservative, the trial court determined her monthly living costs to total $742.95.
Although her present temporary job does not guarantee a fixed salary, Mrs. Currier earned $311 in April 1991. Indicating that she had interviewed with several potential employers, she expressed a desire to find a permanent position as soon as possible. She further stated her intention to work regardless of the alimony awarded. Subtracting the amount that the former wife earned in April from her monthly expenses, the trial judge determined an appropriate alimony award to be $450 per month.
Arguing that his ex-wife is capable of supporting herself, appellant, who earns a base monthly salary of $2515 plus quarterly-paid overtime, maintains the award to be excessive. In that respect, mindful of the wife's ability and desire to work, the trial court ordered that she inform her former spouse, by certified mail, when she obtains permanent employment. At that time, of course, he may seek modification. However, until Mrs. Currier is able to provide for her own means, we find no error in the amount granted.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at defendant-appellant's cost.
AFFIRMED.