614 So.2d 1287 (1993)
Stephanie Ann Nolan MATHEWS, Plaintiff-Appellee,
v.
Richard Allen MATHEWS, Defendant-Appellant.
No. 24,401-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
*1288 Campbell, Campbell & Johnson by John C. Campbell, Minden, for defendant-appellant.
Bodenheimer, Jones, Klotz & Simmons by James P. Bodenheimer, Shreveport, for plaintiff-appellee.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Defendant, Richard Allen Mathews, appeals from a judgment awarding plaintiff, Stephanie Ann Mathews, $550 per month in permanent alimony.
On appeal, Mr. Mathews contends that the trial court erred in holding that adultery or conviction of a felony are the only "faults" which bar permanent alimony. Mr. Mathews argues that Mrs. Mathews abandoned the marital domicile and is thus at fault in the termination of the marriage *1289 so as to be precluded from receiving permanent alimony. We reverse and remand.

FACTS
Stephanie and Richard Mathews were married in June 1990 and established their matrimonial domicile in Minden, Louisiana. On October 10, 1990, one child was born to the marriage. Mr. and Mrs. Mathews physically separated in early March 1991 because of marital discord. On March 20, 1991, Mrs. Mathews filed a petition for divorce pursuant to LSA-C.C. Art. 102. In her petition, she sought a divorce, child support, and alimony pendente lite.
On July 15, 1991, the parties were awarded joint custody of the minor child with Mrs. Mathews as the domiciliary parent. Mr. Mathews was granted visitation rights. Mr. Mathews was ordered to pay $440 per month in child support and to continue to provide health insurance for the parties' minor child. Mr. Mathews was also ordered to pay $300 per month in alimony pendente lite to Mrs. Mathews.
In March 1992, Mrs. Mathews was granted a divorce. The parties were also ordered to continue joint custody arrangements with Mrs. Mathews as domiciliary parent. Mr. Mathews was ordered to continue to pay $400 per month in child support and to continue to maintain major medical health insurance on the minor child. The alimony pendente lite was ordered to continue through the end of March 1992. Mrs. Mathews was awarded $550 per month in permanent alimony. Mr. Mathews appeals the award of permanent alimony.
On appeal, Mr. Mathews contends that the trial court erred in holding that adultery or conviction of a felony are the only "faults" which bar permanent alimony. We agree.

FAULT AS A BAR TO PERMANENT ALIMONY
We addressed this issue to a limited extent in Currier v. Currier, 599 So.2d 456 (La.App.2d Cir.1992). In Currier, this court observed that the 1990 marriage dissolution revisions merely renumbered, and did not alter the post-divorce alimony provisions. In addition, we expressed a view that the general concept of "fault" with respect to an award of alimony continues to embrace conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties. We noted that the Supreme Court in Pearce v. Pearce, 348 So.2d 75 (La.1977) specifically held that to constitute fault, a wife's misconduct must not only be of a serious nature, but must also be an independent contributory or proximate cause of the separation. Given that such "marital duties and responsibilities" of which the Supreme Court speaks, emanate from LSA-C.C. Art. 98, we concluded that the legislative revision and renumbering of the marriage dissolution articles did not represent a change in the general alimony-fault scheme of then LSA-C.C. Art. 160.
However, because of the particular factual findings of the trial court in Currier, our holding was not predicated on the existence vel non of "phantom" Art. 138 fault grounds after the 1990 revisions. We held that, under any of the broad or limited definitions of fault, the facts found by the trial court in Currier, did not constitute alimony barring fault.
Concerning the issue of the continued viability of prior LSA-C.C. Art. 138 fault grounds for purposes of alimony preclusion after 1990, we are mindful of varying views among the circuits. The Fifth Circuit has expressed the view in Hornsby v. Hornsby, 592 So.2d 508 (La.App. 5th Cir. 1991) that "fault" for purposes of alimony preclusion, continues to include the grounds enumerated in the former Art. 138. Likewise, the Third Circuit, in Wicker v. Wicker, 597 So.2d 1273 (La.App. 3d Cir. 1992) has indicated that fault which would preclude alimony remains the type found in former Art. 138.
A contrary view regarding "phantom" Art. 138 has been expressed by our brethren of the First Circuit. See Gitschlag v. Gitschlag, 593 So.2d 1331 (La.App. 1st Cir. 1991), especially n. 4 at 1335. The court noted in dictum that with the legislative abrogation of former C.C. Art. 138's doctrine *1290 of separation from bed and board, the grounds for fault listed in that article also may not obtain after that article's abrogation.
Professor Christopher Blakesley, J.Y. Sanders Professor of Law, Louisiana State University Law Center postulates that, until the issue of what is considered fault today after the codal revision has been decided definitively, we need to consider the former grounds for barring alimony. Professor Blakesley has analyzed all of the appellate decisions which have addressed this question and opines:
It is not necessarily true, however, that a legislature, or this legislature, has decided to retain the old scheme, just because they did not reach the issue. They clearly abrogated article 138, which had clearly been held to be (along with 139) the only bars to entitlement to alimony. When they are gone, it is just as appropriate to argue that the legislature intended to eliminate them as bars to alimony.
See C.L. Blakesley, Louisiana Family Law, Part IV, Chapter 15, "Alimony and Claims for Contributions to Education and Training," pp. 29-32, (Butterworths, 1993 at press).
The aforementioned jurisprudential impasse regarding the status of "phantom" Art. 138 fault grounds is ripe for resolution by legislative action. However, until that occurs, we continue to hold the view that the legislative amendments to the marriage dissolution codal articles did not constitute a legislative intent to abrogate, for purposes of alimony preclusion, all faults other than adultery and felony imprisonment. To the extent that a spouse can prove fault of the quality and magnitude enunciated in Pearce v. Pearce, supra, with its implicit references to Art. 98, an alimony seeking spouse may be barred from obtaining alimony notwithstanding the abrogation of LSA-C.C. Art. 138. A contrary conclusion would lead to the result that an abusive but financially disadvantaged spouse would be virtually assured of a pension (alimony) upon marriage termination, so long as adultery or a felony conviction did not occur. Such a conclusion is inconsistent with both the legislative action and the premises upon which Art. 112 is based (i.e., that one who is guilty of fault, should not receive alimony). Thus, we conclude that the trial court erred in limiting its consideration of fault for purposes of Art. 112 alimony solely to the questions of whether adultery or conviction of a felony had been shown by Mr. Mathews to have been committed by Mrs. Mathews.
In the instant case, Mrs. Mathews admittedly moved out of the marital domicile. Mr. Mathews alleged that Mrs. Mathews abandoned him and is therefore not entitled to permanent alimony. In awarding alimony to Mrs. Mathews, the trial court found only that she had not been shown guilty of adultery or convicted of a felony. For the reasons previously stated, the trial court erred as a matter of law because it did not make any explicit findings as to whether Mrs. Mathews was free of fault in the termination of her marriage based on other grounds.

NATURE AND SCOPE OF APPELLATE REVIEW
A trial court's findings of fact relative to the issue of fault in domestic cases are entitled to great weight and will not be overturned on appeal absent manifest error. Gitschlag v. Gitschlag, 593 So.2d 1331 (La.App. 1st Cir.1991); Blake v. Blake, 478 So.2d 617, 619 (La.App.2d Cir. 1985); Thibodeaux v. Thibodeaux, 525 So.2d 69, 71 (La.App. 3d Cir.1988). As stated in Hogan v. Hogan, 549 So.2d 267, 271 (La.1989),
[A] trial court's alimony or child support order will not be reversed except for abuse of discretion. [citations omitted]. But when the Court of Appeal decides that the trial court has abused its discretion, it is required to assess the evidence anew from the record and render a judgment on the merits as if it were a trial court, rather than to remand the case for further proceedings below. Cf., McLean v. Hunter, 495 So.2d 1298 (La.1986); Ragas v. Argonaut Southwest Ins. Co., 388 *1291 So.2d 707 (La.1980); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
Thus, Hogan mandates de novo review of the merits by the appellate court where the trial court has abused its discretion in making an award of alimony or child support. However, an examination of the jurisprudence which forms the basis for this pronouncement reveals that the Hogan mandate is not a "bright line" rule, applicable to all circumstances.
Hogan cites three cases for the de novo review requirement. In Gonzales, supra, the Louisiana Supreme Court highlighted the "practical consideration which encourages our appellate courts to exercise their jurisdiction to review factual findings: judicial economy." As stated in Gonzales, supra,
When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process. Although the appellate court does not gain the benefit of personally viewing the witnesses, it does have a complete record and the constitutional authority to decide.
McLean, supra, deals with an erroneous jury instruction which, in the interest of judicial economy, was remanded to the appellate court for determination on the merits. However, Ragas, supra, discussed the interests of fairness as follows (emphasis ours):
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.

This is not to say, and Gonzales should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
In light of these legal principles, we now turn to the issue of whether, based on all the evidence in the record, we can fairly determine whether the trial court's alimony order was an abuse of discretion. Specifically, the question presented is whether Mrs. Mathews has proven by a preponderance of the evidence that she was free from fault in the termination of their marriage.

LAW AND EVIDENCE ON THE ISSUE OF FAULT
Permanent alimony may only be awarded to a spouse who has not been at fault in the termination of the marriage. LSA-C.C. Art. 112; Adams v. Adams, 389 So.2d 381, 382 (La.1980). Under Art. 112, a spouse seeking permanent alimony has the burden of proving freedom from fault. Currier, supra; Taylor v. Taylor, 579 So.2d 1142 (La.App.2d Cir.1991); Green v. Green, 567 So.2d 139 (La.App.2d Cir.1990). To be legally at fault, a spouse must be guilty of misconduct which compels a separation because the marriage is insupportable. Brewer v. Brewer, 573 So.2d 467, 469 (La.1991). Mere "nagging" is not necessarily to be equated with legal fault; a spouse need not be perfect to be free from legal fault. Id.
Both Mr. and Mrs. Mathews testified that their marriage was troubled from the beginning and that they argued throughout the marriage. Mrs. Mathews admitted that at times, she became angered by Mr. Mathews and cursed him. Mrs. Mathews testified that Mr. Mathews treated her like a child rather than a wife. She stated that Mr. Mathews ordered her around and restricted her activities. She also stated that Mr. Mathews made her cook, clean, and mow the lawn after she had been placed on strict bed rest because of her high-risk pregnancy.
*1292 Mrs. Mathews testified that Mr. Mathews' violent behavior and periodic outrages were brought on by his consumption of alcohol. She stated that prior to their marriage, Mr. Mathews had ceased drinking and he was participating in Alcoholic's Anonymous where they first met and started to date. She stated that Mr. Mathews started to drink again approximately three to four months after they were married. Mrs. Mathews alleged cruel treatment on the part of Mr. Mathews which drove her from the marital domicile.
Mr. Mathews vehemently denied all the allegations of cruel treatment toward Mrs. Mathews. He testified that Mrs. Mathews initiated the arguments, she was argumentative, and verbally abusive when things did not go her way. He further testified that Mrs. Mathews constantly complained and nagged him about money.
Mr. Mathews testified that he and Mrs. Mathews would argue at least twice a week. He stated that during these arguments, Mrs. Mathews would become loud and verbally abusive. He testified further that Mrs. Mathews lost her temper very easily without any provocation from him.
Mr. Mathews conceded that he was not entirely at fault and neither was Mrs. Mathews. He classified his fault as "minor fault" in the dissolution of their marriage. Mr. Mathews testified that the age difference between him and Mrs. Mathews (he was 45 and she was 21) may have been a significant factor in the termination of their marriage. He stated that he is more of a "home body," and Mrs. Mathews is more outgoing and active.
Teresa Fitch, Mrs. Mathews' mother, testified that on two occasions, she observed visible bruises on her daughter and confronted Mr. Mathews about them. Mrs. Fitch testified that initially Mr. Mathews denied hitting his wife but later confessed to hitting her and vowed never to hit her again.
Cindy Hirth, a family friend of the Mathews, testified that Mrs. Mathews' activities were not restricted and that she could come and go as she pleased. She stated that she saw Mrs. Mathews about once a week and they would go shopping or to lunch. Ms. Hirth testified she never heard Mr. Mathews raise his voice or have any physical altercation with anyone. She described Mr. Mathews as even tempered. Ms. Hirth testified that Mrs. Mathews never confided in her about Mr. Mathews' refusal to assist her in obtaining medical treatment or about Mr. Mathews being verbally or physically abusive toward her.

DISCUSSION
The primary witnesses in this case are the parties themselves. The veracity of their complaints about each other in many respects cannot be tested by a mere reading of the transcript. In this case, the emotional nature of the mutual charges of physical abuse, verbal abuse, abandonment, mental cruelty, etc., are inextricably intertwined with the credibility calls that are inherent in the trial court's proceedings.
Fairness and the interest of justice demand that the issues of fault on the part of either or both the Mathews must first be decided by the trial judge who heard and saw the witnesses testify. As the Supreme Court recognized in Brewer, supra, "nagging" is not necessarily equivalent to legal fault. Due to the conflicting evidence on the issue of Mrs. Mathews' fault, an assessment of the credibility of the witnesses is imperative to the ultimate resolution of the issue. Accordingly, we remand the case to the trial court for further proceedings consistent with this opinion.
In remanding, we recognize the Supreme Court's mandate in Hogan that, where the record is otherwise complete, the court of appeal must decide the case rather than remand. For the following reasons, we view this case as an exception to the Hogan rule.
Our careful review of this record reinforces, the time honored precept that domestic case are peculiarly and particularly susceptible to the trial court's unique appreciation of credibility of witnesses. See Pearce, supra. Sizing up that credibility is more often than not the end product of an analysis greatly dependent upon the witnesses' *1293 physical posture, their facial expressions, tone of voice, inflection of voice, mannerisms, and other body language, and even their demeanor during the testimony of others. These and other verbal and nonverbal cues are often indispensable to the trial court's difficult assessment of credibility.
In light of the jurisprudence underlying the Hogan mandate, we find Hogan distinguishable. The instant trial court's failure to make the legal and factual determinations previously noted was such that this court cannot determine whether the alimony award was an abuse of discretion. Had the trial court considered fault grounds other than adultery or felony conviction, it may or may not have found that Mrs. Mathews was free from fault.
While the Louisiana Constitution, Hogan, and Gonzales grant us the authority to decide this case de novo, for the foregoing reasons, we find that the interests of fairness and justice outweigh that of judicial economy under the narrow circumstances of this case. Unlike the cases upon which the Hogan mandate is based, a remand in this case does not require a new trial, by jury or otherwise. We remand the case and direct the trial court to make the factual determinations of fault consistent with this opinion.

CONCLUSION
For the above and foregoing reasons, we reverse and remand for further proceedings consistent with this opinion. Costs of the appeal are assessed equally to the parties.
REVERSED AND REMANDED.