631 So.2d 558 (1994)
Nena Grace Gould SKANNAL, Appellee,
v.
John Cunyus SKANNAL, Appellant.
Nos. 25467-CA, 26030-CA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
Rehearing Denied February 17, 1994.
*559 Comegys, Lawrence, Jones, Odom & Spruiell by William G. Nader, Shreveport, for appellant.
Weems, Wright, Schimpf, Hayter & Carmouche by Carey Schimpf, Shreveport, for appellee.
Before MARVIN, VICTORY and WILLIAMS, JJ.
WILLIAMS, Judge.
In this divorce action, the defendant, John Skannal, appeals a judgment awarding the plaintiff, Nena Skannal, $1,000 per month in permanent alimony. Defendant argues the plaintiff was at fault in the termination of the marriage so as to be precluded from receiving alimony. In her answer to his appeal, the plaintiff seeks an increase in the permanent alimony award. She also asserts the trial court erred in failing to order her husband to continue paying alimony pendente lite until the issue of fault was finally determined. We reverse that portion of the judgment of the district court awarding alimony to the defendant.

FACTS
Nena Skannal and John Skannal were married on November 2, 1957 and established their matrimonial domicile in Bossier *560 Parish. Three children, all of whom are now majors, were born of the marriage.
On June 5, 1992, Mr. Skannal left the matrimonial domicile to attend a weekend ham radio operators' convention in Arlington, Texas. While Mr. Skannal was out of town on his trip, Mrs. Skannal moved out of the family home.
Three days later, on June 8, 1992, Mrs. Skannal filed this action for divorce and requested she be awarded alimony pendente lite and permanent alimony. In his answer and reconventional demand, Mr. Skannal asserted that his wife was not free from fault and was not entitled to permanent alimony.
The trial court ordered Mr. Skannal to pay Mrs. Skannal $3,000 per month in alimony pendente lite for the months of June and July 1992 and $2,500 per month thereafter until the judgment of divorce.
On December 10, 1992, Mr. Skannal filed a motion for divorce pursuant to LSA-C.C. Art. 102. In his motion, he alleged his wife abandoned him and therefore was not entitled to permanent alimony. In her answer, Mrs. Skannal claimed she was free from fault and her husband was at fault because he was abusive, neglectful and his behavior made their living together unbearable.
After an extensive trial on the issue of fault, the trial court granted the divorce and ruled that Mrs. Skannal was free of fault in causing the dissolution of the marriage. He awarded her $1,000 per month in permanent alimony. This appeal ensued.

DISCUSSION

Fault
On appeal, Mr. Skannal contends his wife was legally at fault in causing the dissolution of the marriage because she abandoned him.
The 1990 revisions of the codal provision pertaining to the dissolution of marriage repealed LSA-C.C. Art. 138 (grounds for separation from bed and board). The post alimony provisions were renumbered but they were not altered. Mathews v. Mathews, 614 So.2d 1287 (La.App. 2d Cir. 1993); Currier v. Currier, 599 So.2d 456 (La.App. 2d Cir.1992).
LSA-C.C. Art. 112(A)(1) provides in part:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income.
Fault contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities. Pearce v. Pearce, 348 So.2d 75 (La.1977); Mathews, supra. Fault is not limited to the grounds currently enumerated in LSA-C.C. Art. 103. The grounds for fault for the purpose of alimony preclusion listed in the former LSA-C.C. Art. 138 are still valid. Mathews, supra; Currier, supra.
The elements necessary to prove abandonment provided in the former LSA-C.C. Art. 143 were:
1. the party has withdrawn from the common dwelling;
2. the party left without lawful cause; and
3. the party has constantly refused to return to live with the other.
Blake v. Blake, 478 So.2d 617 (La.App. 2d Cir.1985).
The spouse seeking alimony has the burden of proving she or he is without fault in causing the dissolution of the marriage, is in necessitous circumstances and is in need of support. Green v. Green, 567 So.2d 139 (La. App. 2d Cir.1990).
Domestic relations issues largely turn on evaluations of witness credibility, and therefore, the trial judge has much discretion in such matters. Currier, supra. Fault is a factual finding that will not be disturbed unless it is clearly wrong. Pearce, supra; Currier, supra.
Mr. Skannal argues the trial court erred because "uncorroborated testimony of one spouse as to the other spouse's alleged acts, contradicted by the accused spouse, where the credibility of neither is attacked, will not constitute a preponderance of the evidence... absent an ability of the trial court to *561 determine the truth of what occurred by weighing credibility." Jenkins v. Jenkins, 441 So.2d 507 (La.App. 2d Cir.1983), writ denied, 444 So.2d 1223 (La.1984). Mr. Skannal asserts his wife's testimony was uncorroborated as she presented no witnesses nor any documentary evidence to prove her case.
Mr. Skannal testified his wife did not tell him she was unhappy in the marriage. He asserts he had no idea that his wife planned to leave him. He testified that Mrs. Skannal packed the furniture and contents of one of their homes on the Old Sligo Plantation while he was out of town at a convention and left him.
Mrs. Skannal acknowledges she had not told her husband she was unhappy or wanted to end their thirty-five-year marriage. She argues she is not guilty of abandonment since she justifiably left their matrimonial domicile because she was reasonably in fear of her safety. She claims Mr. Skannal stated he would kill her if she left him. Mrs. Skannal also testified that she decided to leave because she is afraid of her husband's violent temper, she believes he is a "closet" alcoholic, he shoots guns at trespassers entering their property and he told her he had killed a man on their property in the late 1970s. She also complained that her husband was a recluse.
On cross-examination, Mrs. Skannal admitted she had planned to leave her husband approximately a year before she actually left. Yet, she and her daughter traveled to England, at Mr. Skannal's expense, approximately six months before she left him. She also admitted that she made several large cash advances from their credit cards after she left the marital home. She testified that she had no intention of returning to her husband or talking to him in an attempt to reconcile.
Mr. Skannal testified that he has had a temper his entire life, but he has learned to control it. He denied ever threatening his wife or sons with bodily harm, but he admitted he has fired "warning shots" over the heads of individuals who trespassed onto his property. He admitted he had one to four drinks of hard liquor a night until approximately eighteen months before trial. He stated because his wife complained, he quit drinking hard liquor and now only has an occasional beer. Mr. Skannal also admitted he is not interested in going out at night or socializing as much as his wife wanted to socialize. He further stated that he had agreed to meet with Mrs. Skannal in an attempt to talk and reconcile their differences.
Virginia Joyner, a close friend of the family, testified at the trial. She stated that although she has known Mr. Skannal since childhood and talks to Mrs. Skannal almost once a week, she had no idea Mrs. Skannal was going to leave her husband. She testified that once, approximately two and onehalf years ago, Mrs. Skannal mentioned to her that she was concerned about her husband's drinking. She further testified that she had never seen Mr. Skannal drink when she visited the family home. Ms. Joyner testified that Mr. Skannal is a shy and withdrawn person who was insecure in crowds, even when his wife was entertaining guests at their home.
Dennis Bamburg, Mr. Skannal's business partner, testified that he has known the Skannals for seventeen years. He often saw Mrs. Skannal when she stopped at the plantation store when she was going to town or getting gas. During her visits, Mrs. Skannal did not seem troubled. He testified he was unaware of any marital problems between the couple prior to Mrs. Skannal's departure. Mr. Bamburg stated he has never seen Mr. Skannal drink alcoholic beverages. He admitted that Mrs. Skannal never confided in him before she left her husband, but, after she left, she informed him that she was concerned for her safety.
Lawful cause which justifies the withdrawal from the common dwelling has been held by this court to be that which is substantially equivalent to a cause giving the withdrawing spouse grounds for a separation under the former LSA-C.C. Art. 138. Mere friction or dissatisfaction in the relationship or incompatibility between the spouses, however intense, is not enough to constitute lawful cause. Blake v. Blake, supra; Quinn v. Quinn, 412 So.2d 649 (La.App. 2d Cir.1982), writ denied, 415 So.2d 941 (La.1982). See *562 also Dugas v. Dugas, 424 So.2d 1189 (La. App. 1st Cir.1982).
The trial judge did not give reasons for finding Mrs. Skannal free of fault or state that Mr. Skannal and his witnesses were not credible. Mrs. Skannal did not present any witnesses or other evidence to corroborate her allegations. She did not present any evidence of violence or threats of violence against her or the children by Mr. Skannal while they were married, nor is there any evidence that Mr. Skannal violently reacted when he discovered she had left him. In sum, she did not prove she was free from fault by the preponderance of the evidence. The reasons given by Mrs. Skannal for leaving the marital home do not amount to lawful cause. Because Mrs. Skannal withdrew from the marital home without lawful cause and has refused to return or even meet with her husband to discuss their differences, she is guilty of abandonment within the contemplation of the former LSA-C.C. Art. 143.
Therefore, after reviewing the evidence, we conclude the trial judge was clearly wrong in finding that Mrs. Skannal left the marital home with lawful cause. Mrs. Skannal is not free from fault and is not entitled to permanent alimony.

Alimony Pendente Lite
Mrs. Skannal contends the trial court erred in failing to order her husband to continue paying alimony pendente lite until the issue of fault, which has been appealed, is resolved. As previously stated, the trial court granted Mr. Skannal's judgment of divorce and ordered him to pay $1,000 per month in permanent alimony.
The purpose of alimony pendente lite is to temporarily provide support, pending the litigation, for the spouse who does not have sufficient income for his or her maintenance. LSA-C.C. Art. 111; Miguez v. Miguez, 604 So.2d 1056 (La.App. 2d Cir.1992), writ denied, 608 So.2d 194 (La.1992). Alimony pendente lite is designed to maintain the economic status quo of the marriage. Miguez, supra. It does not depend on the merits of the divorce suit, or upon the actual or prospective outcome of the litigation. Cassidy v. Cassidy, 477 So.2d 84 (La.1985).
The obligation to pay alimony pendente lite does not terminate until the divorce is final, i.e., the judgment of divorce is definitive. Cassidy, supra; Miguez, supra. Therefore, the support obligation continues even if the issue of fault, and not the judgment of divorce, is appealed. Cassidy, supra; Miguez, supra.
Mrs. Skannal argues that under the current jurisprudence, she is entitled to alimony pendente lite until the issue of fault is finally decided. We disagree.
Under the facts of this case, permanent alimony has been awarded by the trial court. Mr. Skannal has taken a devolutive appeal because a suspensive appeal from a judgment awarding alimony is not permissible. LSA-C.C.P. Art. 3943; Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir.1979).
Thus, the issue in this matter is whether Mrs. Skannal is entitled to continue receiving alimony pendente lite when an award of permanent alimony has been made by the trial court. We conclude that she is no longer entitled to alimony pendente lite.
In the cases in which our courts have determined that a spouse was entitled to continue receiving alimony pendente lite following a judgment of divorce, the other spouse did not have an obligation to pay permanent alimony. See for example the following cases where permanent alimony had not been awarded because the trial court determined that both parties were at fault: Cassidy, supra; Miguez, supra; Green, supra; Nugent v. Nugent, 533 So.2d 1370 (La. App. 3d Cir.1988). Also distinguishable are Bruner, supra and Martinez v. Martinez, 503 So.2d 544 (La.App. 4th Cir.1987). In Bruner, supra, the wife had been receiving alimony pendente lite when permanent alimony was awarded by the trial court. However, the husband was not obligated to begin paying permanent alimony until the divorce was final. Nor was permanent alimony awarded in Martinez, supra, when the Fourth Circuit determined that the wife was entitled to continue receiving alimony pendente lite until the divorce was final.
*563 If we were to apply the general rule of the above mentioned cases, i.e., a spouse is entitled to continue receiving alimony pendente lite until a definitive resolution of the divorce litigation, to the facts of this case, a spouse would be bound to pay alimony pendente lite until the judgment of divorce has become definitive and permanent alimony because a judgment of permanent alimony cannot be suspensively appealed. This is an unequitable result that is not supported by the jurisprudence. A spouse should not be entitled to receive both permanent alimony and alimony pendente lite. The purpose of alimony pendente lite and permanent alimony are both the same: to provide support for a spouse who is without sufficient means for his or her maintenance. With this holding, a needy spouse would still receive support during the pendency of the appeal, but only in the nature of permanent alimony. Under the facts and circumstances of this case, the trial court properly denied Mrs. Skannal's request for the continuation of alimony pendente lite until the issue of fault is resolved on appeal.

CONCLUSION
For the reasons assigned, that portion of the judgment finding Mrs. Skannal free of fault is reversed. The judgment denying Mrs. Skannal alimony pendente lite subsequent to the judgment of divorce is affirmed. Costs are assessed to Mrs. Skannal.
REVERSED IN PART AND AFFIRMED IN PART.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, VICTORY, STEWART and WILLIAMS, JJ.
Rehearing denied.