735 So.2d 809 (1999)
Anna L. GOODNIGHT, Plaintiff-Appellee,
v.
William GOODNIGHT, Defendant-Appellant.
No. 98-1892.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1999.
*811 David L. Wallace, De Ridder, for Anna L. Goodknight.
Martha Ann O'Neal, De Ridder, for William Goodknight.
Before: DOUCET, C.J., COOKS, and PICKETT, JJ.
DOUCET, Chief Judge.
Defendant, William Goodnight, appeals a judgment of the district court finding his ex-wife, Anna L. Goodnight, free from fault in the break-up of their marriage, awarding Ms. Goodnight $750.00 per month in alimony through May 31, 1999, and $1,000.00 thereafter, and ordering him to pay the first and second mortgages on the family home, in which he is living with the couple's major son. We affirm the judgment of the trial court.

FACTS
Anna and William Goodnight were married in Utah in August 1980. Mr. Goodnight worked for the federal government and the couple moved several times in connection with Mr. Goodnight's job. When Mr. Goodnight was transferred to Ft. Polk, Louisiana, the couple established their matrimonial domicile in DeRidder, Louisiana.
In the fall of 1996, Mr. Goodnight was sent to Ft. Lee, Virginia for schooling. While in Virginia he began an adulterous relationship with Cindy Marks. In early 1997, Ms. Marks called the Goodnight residence and Ms. Goodnight learned of the affair. Mr. Goodnight admitted his indiscretion, asked forgiveness and the couple reconciled.
Sometime thereafter ("when" is a disputed issue in the case), Mr. Goodnight went on a three day business trip to Atlanta. Ms. Marks met him in Atlanta. After the trip Ms. Marks called Mrs. Goodnight and revealed that she had met Mr. Goodnight in Atlanta. From that point on the *812 Goodnight's marriage relationship rapidly deteriorated and in November 1997, Mrs. Goodnight left the matrimonial domicile. On December 3, 1997, Mrs. Goodnight filed for a divorce alleging adultery as the grounds. Mr. Goodnight filed an answer and reconventional demand on December 15, 1997, and in a hearing on December 18, 1997, he was granted use of the family home.
A judgment of divorce was granted on June 25, 1998, and a hearing to determine fault and post divorce, spousal support was scheduled for August 24, 1998. In that hearing the trial judge found Mrs. Goodnight free from fault; ordered Mr. Goodnight to pay $750.00 per month alimony through May 31, 1999, and $1,000.00 thereafter; reaffirmed Mr. Goodnight's right to reside in the family home; and ordered him to continue to pay the two mortgages on said home. It is from that judgment that Mr. Goodnight appeals alleging eight errors by the trial court.

LAW AND DISCUSSION
Appellant first alleges the trial judge erred in finding Mrs. Goodnight free from fault in the break-up of the marriage. We agree with the legal definition of fault as discussed by our brethren of the Second Circuit in Guillory v. Guillory, 626 So.2d 826, 829 (La.App. 2 Cir.1993):
"Fault" contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities. Pearce v. Pearce, 348 So.2d 75 (La.1977); Mathews v. Mathews, 614 So.2d 1287 (La. App. 2d Cir.1993); Currier v. Currier, 599 So.2d 456 (La.App. 2d Cir.1992); Taylor v. Taylor, 579 So.2d 1142 (La. App. 2d Cir.1991).
The 1990 marriage dissolution revisions which included the repeal of CC Art. 138 (grounds for separation from bed and board), renumbered, but did not alter the post-divorce alimony provisions. Mathews, Currier, and Taylor, cited supra. A spouse's obligations or marital duties and responsibilities of fidelity, support, and assistance have remained the same irrespective of the codal revisions. Currier, supra.
"Fault" for purposes of alimony preclusion continues to include the grounds enumerated in former CC Art. 138 (adultery; conviction of a felony; habitual intemperance or excesses, cruel treatment, or outrages; public defamation; abandonment; an attempt on the other's life; status as a fugitive; and intentional non-support), and is not limited to the fault grounds currently listed in CC Art. 103 (adultery or a felony conviction). See Mathews, supra; Wicker v. Wicker, 597 So.2d 1273 (La.App. 3d Cir.1992). Compare Gitschlag v. Gitschlag, 593 So.2d 1331 (La.App. 1st Cir.1991).
A spouse seeking permanent alimony has the burden of proving that he or she is without fault. Taylor, supra; Green v. Green, 567 So.2d 139 (La.App. 2d Cir.1990). A spouse is not deprived of permanent alimony simply because he or she was not totally blameless in the marital discord. Pearce, Currier, and Taylor, cited supra; Wynn v. Wynn, 513 So.2d 489 (La.App. 2d Cir.1987). A spouse also is not deprived of alimony when his or her actions amount to a reasonable, justifiable response to the other spouse's provocative acts. Currier, Taylor, and Wynn, cited supra.
Because domestic relations issues largely turn on evaluations of witness credibility, much discretion of the trier of fact is recognized and given deference by the appellate courts. Pearce and Taylor, cited supra. Fault is a factual finding which will not be disturbed on appeal unless manifestly erroneous. Pearce, Currier, and Taylor, cited supra; Blake v. Blake, 478 So.2d 617 (La. App. 2d Cir.1985).
Mr. Goodnight testified that he ended his adulterous relationship with Ms. Marks in December 1996. However, he admits sending her a dozen roses on Valentine Day 1997. He also stated that his business *813 trip to Atlanta was in April of 1997, after the couple reconciled, and that, during the trip, he had no sexual contact with Ms. Marks. Mrs. Goodnight produced a credit card charge receipt from a charge card issued to Mr. Goodnight. The receipt, from an Atlanta hotel gift shop, was dated October 29, 1997, and was signed by Ms. Marks as Cindy Goodnight. While this receipt was eventually excluded from evidence, the testimony concerning the receipt lend credence to Mrs. Goodnight's claim that Mr. Goodnight continues his affair with Ms. Marks through October 1997. On direct examination and initially on cross examination, the Goodnight's son, Michael, testified that his father's trip to Atlanta was in October 1997 and that his father admitted his affair with Ms. Marks to him after the Atlanta trip. Later in the hearing, Michael recanted this testimony.
The trial judge found that the cause of the marital discord was the unfaithfulness of Mr. Goodnight. He did find that the couple quarreled, but concluded that Mrs. Goodnight's quarreling was a result of Mr. Goodnight's unfaithfulness and was a reasonable and justifiable response to Mr. Goodnight's actions.
Since the statutory law does not specify fault which would deny permanent alimony, legal fault must be determined according to the prior jurisprudential criteria. See Lagars v. Lagars, 491 So.2d 5 (La.1986), for an analysis of those criteria. The jurisprudence specifies the conduct which may be considered legal fault.
An association which implies adultery naturally brings on marital discord. A spouse who perceives infidelity may become quarrelsome or hostile. Such a reasonable reaction does not constitute legal fault. The suspicion of adultery causes the break-up and not the reaction. A spouse who reacts should not be precluded from receiving alimony solely because of his or her response. Abele v. Barker, 200 La. 125, 7 So.2d 684 (1942); Brewer v. Brewer, 573 So.2d 467 (La. 1991).
Allen v. Allen, 94-1090, pp. 8-9 (La.12/12/94); 648 So.2d 359, 362.
The trial judge found Mrs. Goodnight's behavior did not rise to the level of legal fault. We find no error in this conclusion.
Mr. Goodnight also complains about the amount of alimony awarded. In this argument he raises a number of points including the findings that Mrs. Goodnight was in necessitous circumstances and was unable to earn sufficient income to meet her needs; the trial judge ordering him to continue paying the mortgages on the family home; the trial judge's alleged failure to apply the factors listed in La.Civ.Code art. 112(A) in making the award; the trial judge ordering a prospective increase in the award; and the trial judge making an award which Mr. Goodnight claims exceeds one-third of his net income.
The award of alimony after divorce is governed by La. C.C. art. 112 which provides in pertinent part:
A. (1) When a spouse has not been at fault and has no sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse.
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;

*814 (d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
(4) Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage.
This article provides that a court may grant a spouse permanent periodic alimony when that spouse has not been at fault and does not possess sufficient means for support. McLaughlin v. McLaughlin, 29,313 (La.App.2d Cir.4/2/97), 691 So.2d 834. Permanent alimony is awarded to a former spouse in need and is limited to an amount sufficient for maintenance, as opposed to continuing an accustomed style of living. Factors to consider in determining whether an ex-spouse is in need of alimony include her income, means, earning capacity, assets, the liquidity of the assets, her financial obligations, her health and age and any other circumstances deemed relevant by the court. Settle v. Settle, 25,643 (La.App.2d Cir.3/30/94), 635 So.2d 456, writ denied 94-1340 (La.9/16/94), 642 So.2d 194.
The claimant spouse has the burden of proving necessitous circumstances or insufficient means for his or her maintenance. Green v. Green, 567 So.2d 139 (La.App. 2d Cir.1990); Guillory v. Guillory, 626 So.2d 826 (La.App. 2d Cir. 1993); McLaughlin v. McLaughlin, supra. An award for maintenance or basic necessities includes reasonable expenses for food, shelter, clothing, transportation, medical care, and income tax liability caused by alimony payments. Brewton v. Brewton, 30,134 (La.App.2d Cir.1/21/98), 705 So.2d 799. Permanent alimony has not been interpreted to include expenditures for newspapers, gifts, recreation, vacation and church tithes. Guillory v. Guillory, supra. The test for expenses for post-divorce alimony is their reasonableness and necessity under La. C.C. art. 112. Preis v. Preis, 93-569 (La.App. 3d Cir.2/2/94), 631 So.2d 1349.
A spouse's earning capacity is a proper consideration in awarding alimony to that spouse. However, earning capacity is only one consideration, and taken alone, it is not a proper basis for rejecting an award of alimony. It does not necessarily follow that a spouse should be required to take employment of any nature immediately following divorce; difficulty in finding employment suitable for the spouse's age, training, and ability is also a proper consideration. Fountain v. Fountain, 93 2176 (La.App. 1st Cir.10/7/94), 644 So.2d 733; McLaughlin v. McLaughlin, supra.

. . . .
The trial court is vested with great discretion in making alimony determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. Settle v. Settle, supra; LaForge v. LaForge, 26,317 (La.App.2d Cir.1/25/95), 649 So.2d 151.
Faltynowicz v. Faltynowicz, 30,606, pp.3-6 (La.App. 2 Cir. 6/24/98); 715 So.2d 90, 93-94.
The record reveals that Mr. Goodnight is a federal civil servant making almost $80,000.00 per year. From his testimony it appears that he has, at least, a bachelor's degree (he spoke of working on his Masters). He is in his mid-fifties and did not complain of any health problems. Mrs. Goodnight is also in her mid-fifties. *815 She has a GED and at the time of the hearing had been working at Wal-Mart for the past nine months. Her salary was less than $10,000.00 per year. Her work experience during her marriage was very limited. She stated that during her marriage to Mr. Goodnight, beside the Wal-Mart job, she worked as a cashier at Walgreens for approximately two years and worked for a short time in Utah at a day care center. She testified that after the hearing she was moving to St. Louis, Missouri, where she planned to live with her married daughter until she could get established. She further testified that if she could find a position at a Wal-Mart in St. Louis, she would not be considered as having a break in service.
Mrs. Goodnight's expense sheet, dated January 8, 1998, shows expenses of $1,899.00. Mr. Goodnight's expense sheet, dated December 15, 1997, shows expenses of $5,584.00. Testimony established that both parties had filed for bankruptcy between the time they separated and the date of the alimony hearing. Mr. Goodnight stated that he had reaffirmed the two mortgages on the family home of $767.00 and $877.00, and Mrs. Goodnight stated that she had reaffirmed the debt on the one credit card she had chosen to keep. Before they declared bankruptcy, the couple had eleven charge cards with an aggregate balance in excess of $65,000.00. There is no indication that the bankruptcy discharge would affect Mrs. Goodnight's estimated expenses, however, Mr. Goodnight, who listed the eleven credit cards and an MBNA loan on his expense sheet would benefit by over $1,800.00 per month. Because he is no longer providing medical insurance coverage for Mrs. Goodnight, he would further benefit. The amount he would benefit is not apparent from the record.
The Goodnights had one child during their marriage (both had children from former marriages), a son Michael Gregory. Michael is a senior in high school and expects to graduate in May 1999. Michael is also serving in the Louisiana National Guard. Currently, Michael lives in the Goodnight family home with his girlfriend and a child he fathered with the girl friend. Mr. Goodnight contributes to the support of his grandchild.
It is well settled that when there is no evidence in the record which shows otherwise, a judgment of the trial court is presumed to be correct. Succession of Thibodaux, 97-1285 (La.App. 1 Cir. 5/15/98); 712 So.2d 651. We find no evidence or testimony in the record which would suggest that the trial court erred in finding Mrs. Goodnight free from fault; in finding her in necessitous circumstances and making the awards he made. Mr. Goodnight complains that since the "permanent" alimony awarded exceeds the alimony pendente lite, this has to be an error. However, as we noted above, a discharge in bankruptcy occurred between the time the parties separated and the date of the fault hearing. Clearly, this changed the financial situation affecting the parties.
Mr. Goodnight also complains that the alimony award exceeds one-third of his net income. However, to make that claim, he adds one-half of the mortgage payments to the alimony award. By his own admission, Mr. Goodnight reaffirmed these debts in the bankruptcy proceedings. Mrs. Goodnight did not do so. Additionally, Mr. Goodnight was granted the use of the family home free and clear of any claim by Mrs. Goodnight for any rental payments. Accordingly, we find this argument to be without merit.
Mr. Goodnight also argues the trial judge erred in ordering a prospective increase in alimony beginning June 1, 1999. We note that this increase was timed to coincide with Michael, the couple's major son, graduating from high school. We see no difference in this and a prospective order decreasing child support upon a child reaching the age of majority. We likewise find this argument without merit.
*816 Finally, we turn our attention to Mr. Goodnight's allegation that the trial court erred in admitting exhibits P-2, P-3, P-8, and P-9 into evidence. P-8 is a copy of a photograph depicting Mr. Goodnight in a compromising pose. P-9 depicts Mr. Goodnight with Ms. Marks. P-2 is a card which includes a hand written note from Mr. Goodnight which, from its contents would appear to have been written in the summer of 1997. Mr. Goodnight admits sending the correspondence to Ms. Marks. And P-3 is a fax to Ms. Marks from Mr. Goodnight sent on January 7, 1997, from his office at Ft. Polk. Mr. Goodnight does not question the authenticity of any of the exhibits but rather claims they are irrelevant and prejudicial. While the exact date three of the exhibits were confected cannot be established, they do support the claims made by Mrs. Goodnight that Mr. Goodnight had an continuing affair with Ms. Marks. It is well settled that "a trial judge has vast discretion concerning the admission of evidence. The trial judge's decision to admit or exclude evidence will not be reversed on appeal absent a clear showing that he or she abused that discretion. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444." State v. Simien, 95-1407, pp. 3-4 (La.App. 3 Cir. 7/24/96); 677 So.2d 1138, 1140-41. Thus, we find no merit to this argument.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Appellant, William Goodnight.
AFFIRMED.
COOKS, J., CONCURS IN PART AND DISSENTS IN PART.
COOKS, J., concurring in part and dissenting in part.
I agree with the majority's affirmance of the trial court's fault finding and the $750.00 award in monthly alimony payments. In all other respects, I disagree.