| JONES, Judge.
Defendant/Appellant, Thomas Bowes, appeals the judgment of the district court, which found that the Plaintiff/Appellee, Kay Bowes, was free from fault in the dissolution of their marriage. The district court also found that Ms. Bowes was in necessitous circumstances. Accordingly, the district court awarded her permanent alimony in the amount of $2,500 per month in light of both- parties’ incomes. Following a review of the record, we hereby affirm the judgment of the district court.
FACTS
On May 26, 1998, the Appellee Kay Bowes, filed a Petition for Divorce and a Judicial Partition of Community Property against her husband, Thomas Bowes, who was the majority owner of Five Star Market, parent company for Hotel De L’Eau Vive, EIT Limited and Benjamin Harrison, LLC. In her petition, Ms. Bowes alleged that she was entitled to a divorce from the defendant because the defendant was engaged in an extra-marital affair, and that he had physically and verbally abused her during the course of their marriage. Ms. Bowes also requested that she be awarded temporary and permanent alimony from Mr. Bowes considering that she did not have sufficient income for her support and | ^maintenance. Additionally, Ms. Bowes requested that the district court prohibit Mr. Bowes from alienating, encumbering dr disposing of community property prior to a judicial partition of them community property.
The parties were subsequently divorced on February 18, 1999. However, on July 6, 1999, the district court held a hearing on the issue of post-divorce or permanent alimony. Following the hearing, the district court found Ms. Bowes’ testimony to be more credible and awarded her permanent alimony in the amount of $2,500 per month. It is from this judgment that Mr. Bowes filed the instant appeal.
FREEDOM FROM FAULT
In his first assignment of error, Mr. Bowes argues that the district court erred in finding Ms. Bowes free firom fault in the dissolution of the marriage. He argues that he asked Ms. Bowes for a divorce because she consistently confronted him and accused him of having extra-marital affairs with other women while they were in the presence of his co-workers, associates and guests at his place of employment. He also argues that Ms. Bowes did not have any evidence to support her beliefs when she confronted him.[1] Mr. Bowes also contends that Ms. Bowes would publicly embarrass, belittle, and insult him by using derogatory language at his place of employment. He further argues that the statements and comments were unprovoked and were done merely to undermine his authority as manager of Hotel De L’Eau Vive.
Moreover, Mr. Bowes argues that Ms. Bowes kept their house in a deplorable *999 condition by caring for over twelve cats, which left feces and a horrible |3odor on the second floor of the house. Despite his complaints, Mr. Bowes argues that she refused to get rid of the cats. In light of Ms. Bowes behavior, Mr. Bowes contends that this Court should reverse the award of permanent alimony since Ms. Bowes’ actions showed that she was not free from fault in the dissolution of their marriage.
In rebuttal, Ms. Bowes argues that her thirteen-year marriage to Mr. Bowes began to deteriorate when Mr. Bowes informed her that he could no longer live with her anymore. Ms. Bowes also contends that several days after asking for a divorce, her husband gave her ten (10) days to vacate the house. Despite her consistent pleading and begging, Ms. Bowes argues that Mr. Bowes refused to reconsider the divorce. In fact, she argues that Mr. Bowes alluded to having discussed the matter with an attorney before he asked her to leave the house. Although she suspected that her husband was having an affair before the separation, Ms. Bowes argues that she did not openly degrade, belittle or harass Mr. Bowes about having an affair at his place of employment. Ms. Bowes also contends that she did not openly discuss these matters in public because she viewed the circumstances surrounding their marriage as being private and of no concern to anyone.
However, Ms. Bowes does argue that Mr. Bowes was physically and verbally abusive to her throughout the marriage. In fact, she argues that on one occasion Mr. Bowes struck her across her face with a watering wand that she was using to water her flowers. Therefore, Ms. Bowes argues that prior to the time that she was asked to leave the house she was free from fault in the dissolution of marriage. We agree.
As it relates to spousal support, LSA C.C. art. Ill provides:
|4In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay, in accordance with the following Articles.
(Emphasis added). To constitute “legal fault” which would preclude permanent alimony at divorce, the misconduct must not only be of a serious nature, but must also be an independent contributory or proximate cause of the separation; these acts are synonymous with the fault grounds that previously entitled a spouse to a separation of divorce. Mayes v. Mayes, 98-2228 (La.App. 1 Cir. 11/5/99), 743 So.2d 1257. (Emphasis added). A spouse is not deprived of permanent alimony because he or she was not totally blameless in the marital discord; further, permanent alimony will not be denied to a party if their actions were considered reasonable or a justifiable response to the other spouse’s provocative acts. Goodnight v. Goodnight, 98-1892 (La.App. 3 Cir. 5/5/99), 735 So.2d 809.
In Goodnight, the wife left the matrimonial domicile and filed for divorce after learning of her husband’s extra-marital affair. Following a hearing on post-divorce alimony, the district court found that the wife was free from fault in the dissolution of the marriage based on credibility. Accordingly, the district court awarded the wife monthly alimony in the amount of $750. In affirming the judgment, the reviewing court found that the cause of the marital discord was the husband’s unfaithfulness. Our brethren at the Third Circuit also opined that a spouse who becomes quarrelsome and hostile after learning of *1000 the other spouse’s infidelity should not denied permanent alimony. In fact, the Third Circuit stated that “[t]he suspicion of adultery causes the break-up and not the reaction.” Goodnight, 735 So.2d at 813.
| [¡Likewise, in Wagner v. Wagner, 96-1420 (La.App. 4 Cir. 12/18/96), 686 So.2d 946, this Court found that the wife was free from fault even though the husband testified that the wife (1) denied him sex over an extended period of time; (2) was a poor housekeeper; (3) had intentionally introduced spicy condiments into his food knowing that the husband was suffering from an ulcer; and (4) that the wife had not contributed to the family finances. Despite the husband’s allegations, we concluded that it was the husband’s drinking problems and ill temper, which contributed to the break-up of the marriage.
In the case sub judice, the record indicates that Mr. Bowes was physically abusive and emotionally insensitive to Ms. Bowes by asking her to leave the home even though he knew that she worked for meager wages at the hotel. The record also indicates that Ms. Bowes suspected that Mr. Bowes wanted a divorce from her because he wanted to spend more time with the other women.
Although Ms. Bowes cared for over twelve cats in the family home, we find that this was not the proximate cause of the separation — especially since Ms. Bowes had eight cats when they initially moved into their family home three years prior to the separation.
Janet Frumveller, an executive assistant for Five Star Markets, and Fanci Hoffman, reservation clerk for Hotel De L’Eau Vive, did corroborate Mr. Bowes’ testimony that Ms. Bowes consistently berated him about having affairs with other women and even other men. The women also testified that Ms. Bowes openly belittled Mr. Bowes about his hygiene, his childhood, and his family. They further testified that Ms. Bowes would become irate with him whenever he took too long running errands for the hotel. Additionally, the women testified that Ms. Bowes | ^described the incident with the watering wand to be an accident, not a serious altercation.
When there are two possible views of the evidence, the trial court’s decisions on credibility cannot be considered manifestly erroneous. See Sciortino v. Sciortino, 99-3117 (La.App. 4 Cir. 11/8/00), 773 So.2d 240. Apparently, the district court found the testimony of the two women was self-serving since both women were still employed by the defendant at the time of the hearing. Therefore, we find that the district court did not err in finding Ms. Bowes to be free from fault in the breakup of the marriage.

NECESSITOUS CIRCUMSTANCES

In his final assignment of error, Mr. Bowes argues that the permanent alimony award should be eliminated or reduced because Ms. Bowes has a substantial employment history and sufficient education to provide for herself. He also argues that Ms. Bowes does not have any physical impairment, which would prevent her from obtaining sufficient employment. Additionally, he argues that the expenses included on her expense sheet are either overstated or excluded by law.
Ms. Bowes, on the other hand, argues that at the time she was asked to leave the family home she was penniless. She contends that her husband neither assisted her in finding suitable housing nor did he provide any financial assistance with the monthly expenses of the apartment. Ms. Bowes argues that at the time of the hearing she was employed as an accounting *1001 clerk for a CPA, who pays $7.00 per hour for working a 40-hour week. She also contends that her father, not the defendant, has paid the expenses for rent, utilities, electricity, food and gas since she left the family home in May 1998. Moreover, Ms. Bowes argues that she does not have a checking or savings account because Mr. Bowes dictated the financial 17affairs of the home; thus, she had no need for a banking account. Hence, Ms. Bowes argues that she is in need of permanent alimony because her present income is insufficient. Again, we agree.
LSA-C.C. art. 112 provides that:
A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
1. The needs of the parties
2. The income and means of the parties, including the liquidity of such means.
3. The financial obligations of the parties.
4. The earning capacity of the parties
5. The effect of custody of children upon a party’s earning capacity
6. The times necessary for the claimant to acquire appropriate education, training or employment.
7. The health and age of the parties.
8. The duration of the marriage
9. The tax consequences to either or both parties.
B. The sum awarded under this Article shall not exceed one-third of the obligor’s net income.
Post divorce alimony is awarded to a former spouse who is in need and such award is limited to an amount sufficient for maintenance, as opposed to continuing an accustomed style of living. Carr v. Carr, 33-167 (La.App. 2 Cir. 4/5/00), 756 So.2d 639, 643. The trial court is vested with great discretion in making postdivorce alimony determinations and its judgment as to whether the spouse has insufficient means for support will not be disturbed absent a manifest abuse of discretion. Id. Nevertheless, the spouse claiming permanent periodic alimony has the burden of proving necessitous circumstances or insufficient means for his or her maintenance. See Goodnight, 735 So.2d at 814.
Mr. Bowes is a successful businessman who has a 97.5% ownership interest in three distinct corporations — Five Star Markets, EIT Limited and Benjamin | ¡¡Harrison, LLC. While Mr. Bowes testified that his annual income from Five Star Markets ranges between $50,000 to $60,000, the record reflects that his annual gross income is in excess of $200,000 — if not substantially more. Additionally, the record indicates that Mr. Bowes resides in an exquisite home that is estimated to be worth over $1 million.
On the other hand, Ms. Bowes is a forty-three year old high school graduate with no children. However, she testified that Mr. Bowes only paid her $40 a week to be the reservations manager for Hotel De L’Eau — a position she held since 1991. Ms. Bowes did attend college, but she did not receive a degree. Her employment history has been mainly composed of answering telephones and doing various bookkeeping tasks. At the time of the hearing on post-divorce alimony, Ms. Bowes testified that she lived in an apartment that rented for $435 per month, and that her father virtually pays for all of her expenses. She also testified that she drives a 1998 Mercury Mountaineer that Mr. Bowes pays $355 per month, along with $100 in automobile insurance. Further, she testified that her annual gross *1002 income from working as an accounting-clerk is less than $15,000, and that she does not have health insurance through her employer.
In light of Mr. Bowes’ earning capacity, lucrative investments and substantial gross salary at the time of the hearing, we find that the district court did not err in awarding Ms. Bowes $2,500 per month in permanent alimony. Further, we find that this amount does not exceed one-third of Mr. Bowes net income.

\ «DECREE

For the foregoing reasons, we affirm the judgment of the district court, which found the petitioner, Kay Bowes, to be free from fault in the dissolution of her marriage with the defendant, Thomas Bowes. We also affirm the award of $2,500 in post-divorce permanent alimony in favor the petitioner.

AFFIRMED.

. Even though Mr. Bowes initially requested the divorce, Ms. Bowes was the party who filed for divorce in Civil District Court.