478 So.2d 564 (1985)
Bobbie Katherine DOOLEY, Plaintiff-Appellant,
v.
Vol S. DOOLEY, Jr., Defendant-Appellee.
No. 17232-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
Writ Denied January 13, 1986.
Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn by Robert C. Lowe, Barbara J. Damitz, and Terence L. Hauver, New Orleans, for plaintiff-appellant.
Sockrider, Bolin & Anglin by H.F. Sockrider, Jr., Shreveport, for defendant-appellee.
Before MARVIN, FRED W. JONES and LINDSAY, JJ.
MARVIN, Judge.
Mrs. Dooley appeals a judgment which decreed a legal separation on the grounds of mutual fault and which dismissed her rule citing her husband for contempt for his alleged failure to comply with alimony and other obligations earlier imposed by the court. La.CC Arts. 138(3), 141, 160. We affirm.
The Dooleys had been married for 31 years and had grown children and grandchildren. Two days after he was reelected as Sheriff of Bossier Parish, Mr. Dooley moved out of the family home in late October 1983. Mrs. Dooley instituted her action for a separation on numerous allegations of cruel treatment and abandonment. Her husband reconvened also alleging her cruel treatment and excesses which rendered their further living together insupportable.
The fault issue is critical not only for the purpose of proving grounds for the separation *565 but for the purpose of deciding whether or not one spouse is entitled to claim from the other permanent alimony after divorce. Pearce v. Pearce, 348 So.2d 75 (La.1977); Guin v. Guin, 378 So.2d 1022 (La.App. 2d Cir.1979); Vail v. Vail, 390 So.2d 978 (La.App. 2d Cir.1980); Tate v. Tate, 442 So.2d 1379 (La.App. 3d Cir.1983).
A spouse is not deprived of permanent alimony merely because he or she "was not totally blameless in the marital discord." Pearce, supra. Alimony is precluded by fault that would entitle the other spouse to a separation or divorce under the faultbased grounds of CC Arts. 138 and 139. Our review of the trial court's findings concerning Mrs. Dooley's conduct, under the grounds for separation pleaded by Mr. Dooley, focuses simply on whether the record and the law support the trial court's conclusion that Mrs. Dooley's conduct rendered the common life insupportable. Adams v. Adams, 389 So.2d 381 (La.1980); Honley v. Honley, 416 So.2d 631 (La.App. 2d Cir.1982).
Mr. Dooley judicially confessed his post -separation fault, but was found guilty as well of pre-separation fault. Both his preand post-separation conduct arose out of his relationship with his secretary. He did not appeal or answer his wife's appeal and thereby is precluded from contesting the trial court's findings. Mr. Dooley contends, of course, that the trial court's judgment is supported by the record and should be affirmed. We agree.
This marriage apparently began to decay at least two years before the physical separation and the marital strife became most intense during Mr. Dooley's 1983 campaign for sheriff of Bossier Parish.
Several months before the separation, Mrs. Dooley began accusing her husband of having an affair with his secretary. These accusations were thereafter continuous. She told others of her suspicions. She once gathered their children in the presence of Mr. Dooley, demanding that he "explain" to them his involvement with his secretary. Mrs. Dooley threatened, to another witness, to "blow away" her husband and his secretary. Others testified that Mrs. Dooley spread rumors among sheriff's personnel and others that Mr. Dooley and his secretary were going to "run off together" to Baton Rouge after the election where he would assume a position with the State of Louisiana. Still another testified that Mrs. Dooley called her husband an S.O.B. (our abbreviation) and called his secretary a whore. Mr. Dooley said he believed that his wife hoped these accusations would cause him to lose the election.
The trial court specifically found no proof of an adulterous relationship between Dooley and his secretary. Even assuming Mrs. Dooley's rage was because of her husband's open attention to his secretary, Mrs. Dooley's conduct and accusations were not justified or reasonable responses to her husband's primary fault and were not made while seeking sympathy or advice. See Lauro v. Lauro, 399 So.2d 1297 (La.App. 4th Cir.1981) and Honley, supra.
The record also supports the trial court's finding that Mrs. Dooley continuously made, during the latter months of the marriage, negative remarks about all aspects of their lives, rendering the spouses' home life insupportable and unbearable. Several witnesses testified that Mrs. Dooley constantly cursed in public, often dressed inappropriately for certain places and occasions, and failed to appear at campaign functions or conventions when she was invited and expected. Mr. Dooley said that these things embarrassed him and caused constant friction at home.
Our highest court long ago recognized that
... if it be true that we are possessed of social, moral, and intellectual notions, with wants to be supplied, with susceptibilities of pain and pleasure, if they can be wounded and healed, as well as the physical part, with accompanying suffering and delight, then we think that conduct which produces perpetual social sorrow may well be classified as cruelty and entitle the sufferer to relief. Krauss v. *566 Krauss, 163 La. 218, 111 So. 683 at 685-6 (1927).
These circumstances represent a "continuous pattern of mental harassment" that renders the common life insupportable. The parties engaged in more than mere "fussing and bickering" which is indicative only of "mutual incompatibility" and which is not recognized as fault for a separation. Loyd v. Loyd, 336 So.2d 912 (La.App. 2d Cir.1976).
Although Mrs. Dooley denied her husband's allegations and contradicted them in her testimony, the trial court stated that Mrs. Dooley "constantly exaggerated the truth." The court accepted Mr. Dooley's corroborated accounts. This credibility finding is clearly within the trial court's discretion. Pearce, supra.
Several officers of banks where the Dooleys obtained credit or held accounts also testified. One said that Mrs. Dooley ran up large overdrafts on the family checking account. Mr. Dooley said Mrs. Dooley "padded" checks that he signed for her to buy groceries after he "took the checkbook away from her" in an attempt to prevent overdrafts. Mr. Dooley said his wife's "financial irresponsibility" embarrassed him, especially when he had to borrow money personally from a bank officer-friend to cover the overdrafts. Dooley also said that he did not consent to large loans she made to improve their home and had instead suggested that they remodel the house one room at a time.
The record supports the trial court's finding that money matters were a constant source of conflict in the marriage. Mrs. Dooley's assertions of Mr. Dooley's "financial excesses" and irresponsibility, which allegedly "forced" other members of the family to "do without," while perhaps relevant to his fault, were not findings of the trial court and do not diminish the culpability of her conduct.
Determinations of when and what cruelties constitute fault are essentially factual. Each case must be decided on its own peculiar facts. While a single instance of cruelty ascends to legal fault only when it is severe, the courts are clearly authorized to consider the cumulative effect on the marriage of instances of less severe conduct. When one spouse's conduct, viewed as a whole, either alone or in combination with that of the other spouse, works to destroy the object of the marriage and to erode mutual harmony, that conduct may support the conclusion of fault that renders the common life insupportable. Krauss, Tate, supra. The trial court did not commit error in finding that Mrs. Dooley was mutually at fault with her husband in causing the marital discord.
Mrs. Dooley contends that the trial court erroneously considered evidence of her post-separation conduct to bolster or to corroborate its finding of pre-separation mutual fault. She argues that post-separation conduct cannot support a finding of fault in a separation judgment because, in the literal and logical sense, that conduct could not have caused or contributed to the initial physical separation.
The trial court's reasons for judgment clearly indicate that the mutual fault was found on pre-separation conduct, although the court made, as well, a cautionary or alternative "finding" of post-separation fault. Post-separation conduct was not used by the trial court to compensate for any lack of pre-physical separation fault. Because the trial court was not clearly wrong in the first respect of pre-separation fault, we do not and need not reach the post-separation fault issue raised by Mrs. Dooley. See and compare, however, Lewis v. Lewis, 446 So.2d 995 (La.App. 3d Cir. 1984); Benoit v. Benoit, 466 So.2d 561 (La.App. 5th Cir.1985); and Schwartz v. Schwartz, 472 So.2d 115 (La.App. 5th Cir. 1985).
The final issue is dismissal of the contempt rule. Mrs. Dooley states in brief and the trial court's reasons also state that, during a pre-trial conference, the trial court set the rule for hearing at the close of evidence on the separation action. The evidence was closed just before a noon recess. The case was argued and decided after the recess. The record does not indicate that, either before or after the recess, the court *567 called the rule for consideration or that counsel for Mrs. Dooley called the rule to the court's attention or objected to the trial court's announced disposition.[1]
Counsel for Mrs. Dooley did not request or move for a continuance. The record does not suggest discretionary or peremptory grounds for continuing the rule. CCP Arts. 1601, 1602. The trial court set the rule for hearing, both parties were present, and neither party put on evidence. Under these circumstances, dismissal of the rule with prejudice was not an abuse of the trial court's authority. CCP Art. 1631; Fidelity Acceptance Corp. v. Brown, 382 So.2d 1007 (La.App. 1st Cir. 1980); Bradford v. J. Ray McDermott & Co. Inc., 347 So.2d 1218 (La.App. 1st Cir.1977).
For reasons given by the trial court which we have summarized and which we adopt, and at appellant's cost, the judgment appealed is AFFIRMED.
NOTES
[1] The trial court said

"... I was going to do my best to rule on all the pending things so that we could bring this thing to a conclusion. I have a feeling that it needs to, for their sakes, it needs to be brought to a conclusion. So first of all as to the contempt rulewell, first of all when we began the trial, we indicated that there were three issues to be decided. The first was the fault of either party and the second was the question of attorneys' fees and the third was contempt. Then in addition to that, there was the First Security lawsuit that needed to be determined, also. First of all as to the contempt rule, I don't have any evidence to that. It iswas here for hearing today, and so I'm going to dismiss that rule with prejudice for the simple reason that everything's at issue here today, and I want the matter brought to a conclusion."