MARVIN, Chief Judge.
In this action between a wife and husband, the trial court denied the wife’s main demand for a divorce on the grounds of adultery. Addressing the other demands, the court found neither party was “at serious fault,” and granted a legal separation based on the parties’ having lived apart for six months and continued a prior award of $200 per month alimony pendente lite to the wife.
Mrs. Lachney appeals, contending the trial court was clearly wrong in finding that she did not prove adultery. She asks that we reverse and render a judgment of divorce and award permanent alimony on the evidence in this record rather than remanding to allow the trial court to make the award.
We find no clear error and affirm.
Mrs. Lachney’s adultery divorce action is founded on circumstantial evidence. To prevail, she had the burden of excluding every reasonable hypothesis other than commission of adultery. Jessen v. Jessen, 386 So.2d 953 (La.App. 3d Cir.1980). This burden of proof is not satisfied merely by evidence that the other spouse had the opportunity to commit adultery. Wynn v. Wynn, 513 So.2d 489 (La.App. 2d Cir.1987). The trial court’s credibility evaluations in adultery cases are given “very substantial weight” on review. Pearce v. Pearce, 348 So.2d 75 (La.1977); Wynn v. Wynn, supra.
The trial court found that Mrs. Lachney proved an “association,” but not an adulterous relationship, between Mr. Lachney and another woman. On this record, we cannot say this finding is clearly wrong.
FACTS
The Lachneys, now both in their early 50’s, were married in 1960. After being legally separated in the late 1970’s because of Mr. Lachney’s adultery, they reconciled in 1984 or 1985. They lived together in Shreveport until July 6, 1989, when Mr. Lachney moved to south Louisiana. He claims he has since been living with his sister, Audrey, in Mandeville. Mrs. Lach-ney claims he has been living in an adulterous relationship with a 28-year-old woman, Terry Farmer, near the town of Bush, about 15 miles from Mandeville.
Mr. Lachney enjoys horseback riding and is active in the Dixie Trail Riders Association. He spent the weekend prior to July 6, 1989, on a trail ride in a state park near Bunkie. On that weekend, Mrs. Lachney got a phone call from Terry Farmer’s husband, Rocky, who told her that Mr. Lach-ney had been seeing his wife. Terry was also away from home that weekend. Mrs. Lachney told Mr. Lachney of the telephone call.
Mr. Lachney denied that he saw Terry that weekend, saying he first met her over Labor Day weekend in 1989. He later admitted that he had been introduced to her in February 1988, when her name was Terry Voorhies. Terry married Rocky Farmer in May 1989 and separated from him in July 1989.
Rocky Farmer testified at trial. Mrs. Lachney’s attempts to have a subpoena served on Terry Farmer were unsuccessful. Neither Terry nor Mr. Lachney’s sister, Audrey, testified.
Rocky testified that someone named Audrey left a message for Terry on their answering machine about 12:30 a.m. on June 20, 1989, asking Terry to call her at home. Rocky woke Terry to give her the message. She said she didn’t know anyone named Audrey. The next day she told *1099 Rocky, “I am seeing somebody and ... that was his sister calling here because he wanted to talk to me.” Terry didn't tell Rocky the name of the man she was seeing, but Rocky suspected it was Mr. Lach-ney.
Terry spent the weekend of June 30-July 2 away from home. When she returned, she told Rocky she had been “camping with Roland ... the guy we went on the trail rides with.” Terry apparently knew that Rocky had called Mrs. Lachney over the weekend. Rocky said “the first thing that Terry asked me was why had I called Roland’s wife on him.” Rocky left for a few days and did not return home after Terry told him, “I’m in love with him ... I don’t want you back.” [1]
Within a month after Rocky left, he returned to the trailer where Terry lived to pick up his things. He said he found Roland Lachney’s checkbook in a dresser drawer in the master bedroom and some medicine bottles with Roland Lachney’s name on them. He said the other bedroom in the trailer was used for storage. Rocky’s bedroom set had been taken down and there was a king-size bed in the master bedroom. In the yard around the trailer, Rocky noticed some stone statues of birds or frogs that had not been there before.
Edward Hall, Mrs. Lachney’s private investigator, later took pictures of a redbird statue outside Terry’s trailer. Mrs. Lach-ney identified the bird as one of the yard ornaments that she and Mr. Lachney had kept in their yard. She said these yard ornaments “vanished” when Mr. Lachney left.
Hall observed Terry’s trailer on March 4-5, 14-16 and 27-28, 1990. On the March 4-5 surveillance, he saw Terry’s car and Mr. Lachney’s pickup parked near the trailer. He could not see any activity in or around the trailer because of heavy fog.
On March 14, Hall served subpoenas on several witnesses and tried unsuccessfully to serve Terry at home and at work. He said that as he was leaving the trailer after one of his attempts to serve Terry, Mr. Lachney “drove out from behind the trailer and got behind me.” On the night of March 15, Hall saw Mr. Lachney’s truck parked at the trailer and Terry’s car parked in a neighbor’s driveway 20 or 30 yards away. Around 7:00 a.m. on March 16, Hall saw Mr. Lachney and Terry leave the trailer. Hall heard a vehicle start but the approach of a guard dog prevented him from discerning which vehicle started or whether Mr. Lachney and Terry left together.
Hall again saw both vehicles parked outside the trailer on the night of March 27. The lights in the trailer were off when Hall set up surveillance in the woods nearby at about 11:45 p.m. Hall saw no activity until 6:58 the next morning, when Terry exited the trailer and drove away in her car. At 7:02 a.m., Hall saw Mr. Lachney exit the trailer, cover a garden tiller with a piece of plastic he obtained from the barn, and walk back toward the trailer. Before being again scared off by dogs, Hall took pictures of Mr. Lachney. The trial began two days later, on March 30.
Mr. Lachney admitted that his truck had been at Terry’s trailer overnight, explaining that Terry had hired him as general manager of her vinyl siding business about three weeks earlier and that he sometimes leaves his truck, which has the name of Terry’s business on each door, at Terry’s trailer with a load of materials in it. He and Terry each keep a horse at the trailer and he sometimes feeds the horses in the morning. He explained the pictures of him exiting the trailer by saying, “The electrical switch to the barn is right on the inside of the house. I have to open the door ... to turn the switch on to the barn.” He said he had been to the trailer many times, sometimes as early as 6:30 a.m. and as late as 10:00 p.m., but denied that he ever spent the night there.
Mr. Lachney said he and Terry are “real good friends and we’ve been on several *1100 [trail] rides together.” Although he had twice been to the Covington area to look for work within a month before Mrs. Lach-ney confronted him about Rocky Farmer’s phone call, he said he did not intend to end his marriage when he made those trips.
TRIAL COURT FINDINGS
The trial court made these findings:
... what has occurred subsequent to the separation back in July [has] not been proven to amount to adultery in my opinion. [Mr. Lachney] is associated with this younger woman who is about 20 years younger than he is, but it has not been proven to be an adulterous relationship, and was not the cause of the separation at the time. The statement by Rocky Farmer quoting that his wife said she was seeing someone else is [admissible] hearsay but doesn’t amount to proof of adultery. The pictures that were taken and introduced in evidence do admit that he has an association with her, but it doesn’t amount to an adulterous relationship. Pictures are just not of the quality that I can understand. I would have to interprelate [sic] a great deal, I think, in order to determine that they were living together at that house. I don’t think it’s sufficient. So, there will [be] judgment of separation between the parties on the grounds of living six months separate and apart. I find neither party at serious fault. Temporary alimony remains the same.
Mrs. Lachney contends the trial court should have assessed the circumstantial evidence of adultery cumulatively, rather than separately assessing each part of the evidence. She argues that a cumulative assessment shows that “opportunity knocked more than once” and asks that we infer “that people do what comes naturally when they have the opportunity,” as the court did in Menge v. Menge, 491 So.2d 700, 702 (La.App. 5th Cir.1986).
In Menge, the wife admitted that she and another man got undressed and into bed together and had oral sex, but denied that they had sexual intercourse. Here, Mr. Lachney denied having any romantic or sexual involvement with Terry Farmer, and there was no evidence that the two had ever been seen being physically affectionate or intimate, whether in private or in public. The inference of adultery in Menge was drawn from much different facts and cannot be drawn from the facts presented here.
The Lachneys do not dispute that Rocky Farmer’s telephone call to Mrs. Lachney precipitated their physical separation in July 1989. The trial court heard Rocky’s testimony that Terry told him, about the time that the Lachneys separated, she was in love with Mr. Lachney and that he found, several weeks later, some of Lach-ney’s personal belongings in Terry’s trailer, but obviously declined to conclude or infer from this that Mr. Lachney committed an act of adultery with Terry.
The detective’s testimony allows the inference that Mr. Lachney spent the night at the trailer at least twice in March 1990. Mr. Lachney admitted he was at the trailer on the morning when Hall took his picture, but denied ever spending the night there. The trial court resolved this conflicting evidence by finding that Mrs. Lachney proved only an “association,” and not adulterous conduct or an adulterous relationship between Mr. Lachney and Terry Farmer. See Richards, “Pleading and Proof of Adultery as a Ground for Divorce In Louisiana,” 27 La.B.J. 213 (1980).
Stated another way, the court found, expressly and impliedly, that no specific act or acts of adultery had been proved and that Mrs. Lachney proved Mr. Lachney had the opportunity to commit adultery but declined to equate this with proof that he did commit adultery or was engaged in an adulterous relationship with Terry Farmer. The evidence, whether viewed separately or cumulatively, supports the trial court’s findings, which we do not disturb. See and compare Wynn v. Wynn and Jessen v. Jessen, both cited supra.
DECREE
At Mrs. Lachney’s cost, the judgment is AFFIRMED.

. Mr. Lachney objected to Rocky Farmer’s hearsay testimony as to what Terry told him. The trial court overruled the objection, finding the evidence admissible under LCE Art. 804B(3) and (6), because the statements were against Terry’s interest and she was unavailable notwithstanding Mrs. Lachney’s efforts to subpoena her. The correctness of this ruling has not been raised as an issue on appeal.