642 So.2d 202 (1993)
Charles Harold ALLEN, Plaintiff-Appellee,
v.
Mildred Joe Neal ALLEN, Defendant-Appellant.
No. 25281-CA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
Opinion Amending Decision in Part on Rehearing March 30, 1994.
Writ Granted July 1, 1994.
*203 Barham, Adkins & Tatum by Tommy J. Adkins, Ruston, for appellant.
Bobby L. Culpepper, Jonesboro, for appellee.
Before HIGHTOWER, VICTORY and WILLIAMS, JJ.
HIGHTOWER, Judge.
A former wife appeals a divorce decree denying her permanent alimony while granting, she argues, inadequate support pendente lite. She also challenges a subsequent summary decision validating a prenuptial agreement between the parties and declaring their property to be separate. We affirm the initial judgment in all respects, but reverse and remand the summary adjudication.

BACKGROUND
Charles Harold Allen ("Harold"), plaintiff-appellee, and Mildred Jo Neal Allen ("Mildred"), defendant-appellant, married on December 6, 1986. After leaving the matrimonial domicile on October 28, 1991, Harold later petitioned for divorce under LSA-C.C. Art. 102. His spouse soon answered and, also, filed a reconventional demand seeking pendente lite and permanent alimony, use of the family residence and automobile, and termination of the community.
At trial, neither party disputed the granting of a divorce. Rather, the main issue concerned whether the wife's fault barred her permanent alimony claim. Both litigants called a roster of witnesses with widely conflicting testimony.
As set forth in written reasons, after three days of trial, the district court found the wife at fault on the following grounds:
(1) Having conflicts with Plaintiff because Plaintiff made donations to non-profit charitable groups;
(2) Making thousands of dollars of unauthorized credit card charges against Plaintiff's account;
(3) Criticizing Plaintiff to Plaintiff's children;
(4) Mishandling financial affairs, leading to Defendant's personal bankruptcy;
(5) Complaining that Plaintiff did not do enough financially for Defendant's children;
(6) Complaining that Plaintiff bought Defendant a "factory" car rather than a new car;
(7) Categorizing Plaintiff's hometown and home area, to Plaintiff and others, as "the hell hold [sic] of America;"
(8) Arguing "back and forth" with Plaintiff, for a long period of time.
Although indicating the "actions taken individually would not constitute `fault' of a degree *204 to cause the dissolution of the marriage," the trial judge termed such behavior as a whole to be "of a serious nature and rise to that level of `fault' to constitute a contributory cause of the failure of the marriage." Consistent with that pronouncement, the judgment granted the husband a divorce and denied his spouse's claim for permanent alimony, but awarded her $1,000 per month as alimony pendente lite, along with use of the family automobile and home. That decree, signed on November 23, 1992, further reserved any community property rights.
Meanwhile, Mr. Allen moved for summary judgment declaring the parties to be separate in property and returning the car and house to his possession. In support of that motion, he produced a prenuptial agreement rejecting a community property regime, in addition to a deposition and affidavits verifying the events surrounding execution of the contract. Subsequently, Mrs. Allen filed a dilatory exception maintaining that LSA-C.C.P. Art. 969(A) precludes use of such a procedure for determining marital property rights. Alternatively, she presented an opposing affidavit asserting certain factual issues in reference to the transaction. Following a hearing on December 10, 1992, the trial judge granted the relief sought by movant, after overruling the exception.
Mrs. Allen now appeals those portions of the divorce judgment relating to permanent and interim spousal support, as well as the summary judgment.

DISCUSSION

Permanent Alimony
In her first two assignments, Mrs. Allen contends the trial court erred in finding her at fault in the marriage dissolution. She first argues that her actions, as enumerated by the trial judge, do not constitute sufficient grounds to bar post-divorce alimony. Second, she urges that her conduct arose in justifiable response to her husband's shortcomings and should not defeat her support entitlement.
Of course, under LSA-C.C. Art. 112, a spouse seeking permanent alimony must be without fault, and the burden of proof is upon the claimant. Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Currier v. Currier, 599 So.2d 456 (La.App. 2d Cir.1992); Taylor v. Taylor, 579 So.2d 1142 (La.App. 2d Cir.1991).
Notwithstanding recent codal revisions pertaining to dissolution of marriages (Acts 1990, Nos. 1008, 1009), the concept of alimony-preclusive "fault" is not limited to adultery and felonies resulting in incarceration. That term instead, as we discussed in Currier, supra, and Mathews v. Mathews, 614 So.2d 1287 (La.App. 2d Cir.1993), both citing Civil Code Article 98 and Pearce v. Pearce, 348 So.2d 75 (La.1977), continues to contemplate substantial commissions or omissions violating a spouse's marital obligations and proximately causing or independently contributing to the breakup of the marriage. Indeed, as noted in Mathews, supra, at least two circuits have concluded that the post-divorce scheme still encompasses the former Civil Code Article 138 grounds as "phantom" bars to alimony. See Hornsby v. Hornsby, 592 So.2d 508 (La.App. 5th Cir.1991), writ denied, 597 So.2d 1030 (La.1992); Wicker v. Wicker, 597 So.2d 1273 (La.App. 3d Cir. 1992).
In the case sub judice, the lower court's factual findings effectively preclude alimony, whether "fault" is measured against the Pearce-Article 98 precepts or even the "phantom" Article 138 standard. And, unless clearly wrong, such determinations of fact cannot be disturbed on appeal. Pearce, supra; Taylor, supra; Green v. Green, 567 So.2d 139 (La.App. 2d Cir.1990). Given that domestic relation issues largely turn on evaluations of witness credibility, a trial judge perforce should be vested with great discretion in such matters. Pearce, supra; Mathews, supra; Currier, supra; Taylor, supra.
The major problems between the Allens clearly revolved around monetary issues. In point of fact, Mildred's general irresponsibility in that regard eventually led to her personal bankruptcy. Several times early in the marriage, Harold financially rescued his wife and provided substantial sums to aid her adult children. Later, after becoming frustrated with the situation, he advised her to *205 cease borrowing money or co-signing loans for her daughter and two sons. Mrs. Allen, however, ignored that advice by continuing to incur debt without her husband's knowledge, and in disregard of her belief that "most children" do not repay such indebtednesses. Additionally, despite her present contention that she left her job at a local bank for health reasons, testimony by others and her subsequent active participation in numerous community projects tended to establish that she voluntarily became unemployed, beginning in the second year of the marriage.
Mr. Allen explained that, as president of the Jonesboro State Bank, a prominent institution in the area, the general monetary irresponsibility and eventual bankruptcy of his wife greatly embarrassed him. Thus, in light of the overwhelming evidence of Mrs. Allen's careless fiscal behavior, the trial judge assigned that conduct and resulting liquidation proceedings as a factor causing the divorce. Clearly, financial disputes and mismanagement of funds can erode marital harmony and constitute fault. Cf. Wynn v. Wynn, 513 So.2d 489 (La.App. 2d Cir.1987); Halley v. Halley, 480 So.2d 869 (La.App. 2d Cir.1985), writ denied, 481 So.2d 1336 (La. 1986); Dooley v. Dooley, 478 So.2d 564 (La. App. 2d Cir.1985), writ denied, 480 So.2d 741 (La.1986).
Another substantial money matter involved Mrs. Allen's unauthorized procurement of a duplicate credit card in her husband's name and subsequently charging thousands of dollars, including some $8,000 for her daughter's wedding, to that account. Plaintiff admitted obtaining the indicated device without her husband's knowledge, but claimed she had permission to debit the nuptial expenses. On the other hand, Mr. Allen testified he only offered to pay for a marriage license and provide funds for the couple to elope. He further asserted that, after reluctantly covering several initial expenses, he told Mildred and the bride they could not bill any additional items. The trial judge obviously accepted the husband's version of the events, listed in the written opinion as the second grounds of fault.
Likewise, as a third factor causing the marital breakup, the district court noted the wife's criticisms of her spouse's donations to a church and local high school. In seeking, at trial, to downplay this aspect of the case, Mrs. Allen characterized her expressions of displeasure as merely "comments" reflecting her disappointment at learning about the "wonderful" contributions from other persons, rather than from her husband. However, corroborated by other witnesses, Mr. Allen stated that Mildred had been much more adamant in her views, and the trial judge arrived at the same conclusion.
Thus, these three items of misconduct by the wifeagain, all concerning money mattersdistinctly comprised the more serious points of discord between the parties. Even so, the trial court concluded that five other listed factors also contributed to the disintegration of the marriage. Concededly, some of these additional components individually and superficially resemble mere nagging, which the jurisprudence does not necessarily regard as legal fault. See Brewer v. Brewer, 573 So.2d 467 (La.1991); Mathews, supra. But, when viewed collectively and in light of the three major problems between the parties, a pattern of frequent harassment, upbraiding, and griping appears, all supporting a determination synonymous with cruel treatment. Cf. Taylor, supra.
The record as a whole, then, bespeaks of conduct violative of the marital relationship, rendering life together insupportable and contributing to the ultimate destruction of the marriage. Certainly, the trial judge did not commit error in considering the totality of the circumstances. See Wynn, supra; Dooley, supra. Nor do we agree with appellant's argument that the simple elimination of any one the court-listed factors would negate "legal fault" in this case.
Mrs. Allen alternatively contends her actions came in response to her husband's primary fault, his alleged relationships with several women. True enough, a justifiable, reasonable response by one spouse to the initial fault of the other will not obstruct permanent alimony. Currier, supra; Green, supra; Wynn, supra; Halley, supra. Under the present facts, however, *206 the trial judge found the wife's actions lacking justification and reasonableness.
To illustrate her contention, Mrs. Allen introduced a recording of very flirtatious telephone conversations between her husband and two women, these transpiring in July or August of 1990. While we can easily understand that appellant would be upset by hearing the tape, the total evidence clearly shows the marriage having deteriorated well before these events. Mildred's financial problems certainly started earlier than, and logically do not correlate to, the two portrayed colloquies; the daughter's unauthorized wedding expenses obviously antedated the June 16, 1990 marriage; and, at least one of the problematic donations occurred in 1989. Nor, of course, does the recorded dialogue establish adultery. Cf. Billingsley v. Billingsley, 618 So.2d 562 (La.App. 2d Cir.1993); Dean v. Dean, 579 So.2d 1124 (La.App. 2d Cir.1991), writ denied, 584 So.2d 683 (La.1991); Lachney v. Lachney, 579 So.2d 1097 (La.App. 2d Cir.1991). Plainly all, indeed most, of appellant's actions cannot be categorized as justifiable responses.
Accordingly, in view of the trial court's broad discretion in credibility determinations, the record adequately supports the finding that the wife's actions contributed to the dissolution of the marriage and, thus, bar her permanent alimony demand.

Alimony Pendente Lite
In another assignment of error, the former wife assails the alimony pendente lite award of $1,000 per month as inadequate.
Pursuant to LSA-C.C. Art. 111, if a spouse has not sufficient income for maintenance pending the suit for divorce, a judge may allow support proportioned both to the needs of the claimant and the means of the other spouse. Warren v. Warren, 617 So.2d 545 (La.App. 2d Cir.1993), writ denied, 620 So.2d 846 (La.1993). In essence, alimony pendente lite is designed to maintain the status quo insofar as the economic circumstances of the marriage are concerned. Ridings v. Ridings, 595 So.2d 343 (La.App. 2d Cir.1992). At all times, the amount of such an award is left largely to the sound discretion of the trial judge and will not be disturbed on appeal absent abuse. Warren, supra; Ridings, supra.
Here, the trial court awarded the former spouse not only monthly alimony pendente lite of $1000, but also use of the family automobile and former matrimonial domicile. Additionally, Mr. Allen paid Mildred's car and home insurance, utilities, and other expenditures related to the home. In support of her claim, plaintiff submitted tax returns showing her husband's annual income to be several hundred thousand dollars, and an affidavit reflecting her monthly obligations at $4274. Through cross-examination, however, opposing counsel extensively challenged the validity of the asserted expenses. After apparently refusing to accept the presented list as completely accurate, the trial judge took into account Mrs. Allen's use of the house and automobile, and evidently also considered the outlays already paid by defendant. Hence, based on the record, we cannot term the award an abuse of discretion.
In his brief, Mr. Allen maintains that the lower court erred in extending alimony pendente lite until the judgment of divorce becomes final. Yet, he has not answered the appeal or otherwise properly brought the issue before us. See LSA-C.C.P. Art. 2133; Dixon v. Mid-South Rail Corp., 580 So.2d 438 (La.App. 2d Cir.1991), writ denied, 584 So.2d 1160 (La.1991). Consequently, we do not consider the complaint.[1]

Summary Judgment
Mrs. Allen, in her fourth assignment of error, argues that LSA-C.C.P. Art. 969 forbids the use of summary judgment for determining her property rights under a prenuptial agreement. We agree.
In this situation, the plain language of the article must control. LSA-C.C.P. Art. 969(A) states:

*207 Judgments on the pleadings and summary judgments shall not be granted in any action for divorce or annulment of marriage, nor in any case where the community, paraphernal, or dotal rights may be involved in an action between husband and wife.
Logically, resolution of the validity of the premarital contract determines whether community or paraphernal rights exist. Summary judgment thus, as discussed in Arnona v. Algiers Homestead Ass'n, 431 So.2d 18 (La.App. 4th Cir.1983), writ denied, 437 So.2d 1155 (La.1983), is not the proper procedural vehicle for deciding such issues. Notably, the parties' divorce did not become final before Mr. Allen asserted his separate property claim. Hence, we are not confronted with a post-divorce demand similar to Fisk v. Mathews, 525 So.2d 223 (La.App. 1st Cir.1988), and cases cited therein.
By design, Art. 969(A) is a procedural safeguard ensuring each party the opportunity to present evidence and have a full hearing on all issues involving spousal property rights. Arnona, supra. This is particularly important where, as here, formal defects and vices of consent are alleged with respect to the prenuptial contract. Cf. Heyl v. Heyl, 445 So.2d 88 (La.App. 2d Cir.1984), writ denied, 446 So.2d 1228 (La.1984); Lamb v. Lamb, 460 So.2d 634 (La.App. 3d Cir.1984), writs denied, 462 So.2d 1249, 1250 (La.1985) (two cases in which a wife argued such an agreement to be invalid on similar grounds).
In short, deeming the utilized procedure improper for assessing the validity of the matrimonial contract, we reverse the summary judgment and remand for additional proceedings regarding marital property rights.

CONCLUSIONS
For the above reasons, the November 23, 1992 judgment of divorce is affirmed in its entirety. However, the December 10, 1992 summary judgment regarding marital property rights under the prenuptial agreement is reversed and vacated, and the matter is remanded for further appropriate proceedings. Costs of appeal are assessed equally to the parties.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
Before LINDSAY, HIGHTOWER, VICTORY, WILLIAMS and PRICE (ad hoc), JJ.

ON REHEARING
VICTORY, Judge.
We granted a rehearing in this case to reconsider the original ruling on the amount of alimony pendente lite. As noted in the original opinion, the affirmance of the amount of $1,000 set by the trial court was based on the fact that Mr. Allen was voluntarily paying additional expenses on behalf of Mrs. Allen at the time the lower court award was made.
We now recognize that the earlier ruling was in error, since Mr. Allen was not under court order to pay the other expenses. After reviewing the evidence presented at trial on the issue of alimony pendente lite, we now determine that the trial court award of alimony pendente lite of $1,000 was manifestly erroneous and $3,000 per month should have been awarded. Mr. Allen is entitled to credit against the $3,000 award for the expenses and alimony pendente lite he has paid on behalf of or to Mrs. Allen.
In all other respects, the original opinion and judgment stands.
AMENDED, AND AS AMENDED, AFFIRMED.
HIGHTOWER, J., dissents from the amendment, but concurs in the reaffirmation of the original opinion.
NOTES
[1] Concerning the issue of when alimony pendente lite ends, see Jenkins v. Jenkins, 616 So.2d 786 (La.App. 2d Cir.1993); Miguez v. Miguez, 604 So.2d 1056 (La.App. 2d Cir.1992), writ denied, 608 So.2d 194 (La.1992).