# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-628


JOHN DAVID MOORE

VERSUS

ESTELLE MARTIN MOORE


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 99-7266-B,
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.


**Cooks, J., dissents and assigns written reasons.**

**AFFIRMED.**

Kerry L. Spruill
Spruill Law Office, LLC
Post Office Box 977
Marksville, Louisiana  71351
(318) 240-7501
Counsel for Plaintiff in Rule/Appellant:
    Estelle Martin Moore

Cory P. Roy
Attorney at Law
Post Office Box 447
Marksville, Louisiana  71351
(318) 253-4622
Counsel for Defendant in Rule/Appellee:
    John David Moore

SULLIVAN, Judge.

Estelle Martin Moore appeals the dismissal of her claim for spousal support against her former husband, John David Moore, after the trial court found that the claim was barred by a mutual release contained in their community property partition agreement. For the following reasons, we affirm.

**Discussion of the Record**

John and Estelle were married on June 2, 1973. On December 2, 1999, John filed for divorce under La.Civ.Code art. 102. Estelle reconvened seeking, among other demands, interim spousal support, which the trial court set by judgment of February 24, 2000 at $1,000.00 per month. On May 30, 2000, the trial court signed a judgment of divorce. Also on May 30, 2000, John filed a petition to partition community property that he later amended to include a request for termination of interim spousal support. Estelle responded with a reconventional demand seeking "permanent alimony." After a hearing on July 10, 2000, the trial court signed a judgment terminating interim support and awarding Estelle "permanent periodic support" of $1,000.00 per month for a three-year period, retroactive from May 30, 2000 through May 30, 2003.

On August 6, 2000, the parties filed into the court record a document entitled "PARTITION AND DIVISION OF COMMUNITY PROPERTY REGIME WITH ASSUMPTION OF LIABILITIES AND SETTLEMENT OF ALL CLAIMS." In the section entitled "THE SCOPE OF THIS AGREEMENT" the parties state that they desire "to settle, divide and liquidate the community property regime that formerly existed between them," that they are satisfied with the accounting presently made, and that they acknowledge that "they have received one-half of the net assets of the

community property regime as it previously existed between them." The document also contains a section entitled "MUTUAL RELEASE," which provides as follows:

> Each party disclaims in favor of the other party any claims of any nature whatsoever with respect to the community of acquets and gains existing between the parties, a community claim against the separate estate of either party, a separate claim of either party against the community of acquets and gains, or against the separate estate of the other party, whether resulting from the purchase of property, the sale of property, the borrowing of money, income from property, or any other transaction of any nature whatsoever, whether arising under the laws of the State of Louisiana or the laws of any other state of the United States. *This Agreement is not restricted to community property, but marital property of any nature whatsoever and claims arising out of the marital relationship, of any kind*, it being the intention and agreement of the parties that this Agreement is a full, complete and final settlement between the parties with reference to (1) the liquidation of the community of acquets and gains existing between the parties, (2) the partition of community assets, (3) payment of community obligations and other claims between the parties, (4) community claims against the separate estate of either party, (5) the separate claims of either party against the community of acquets and gains, and (6) separate claims of either against the separate estate of the other spouse hereto, whether described herein or not, and *all other claims of any nature with respect to the marital relationship* or with respect to any right, title, interest or claim in and to the property of the other or the community, arising under the laws of any state of the United States and foreign country.

(Emphasis added.)

The agreement concludes with a section entitled "MISCELLANEOUS" that contains the following pertinent paragraphs:

> 1. Subject to the provisions of this Agreement, each party has released and discharged, and by this Agreement does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns, release and discharge the other, or his or her estate, of and from *all causes of action, claims, demands, rights or demands whatsoever, in law or equity, which either of the parties ever had or now has, against the other*.
>
> . . . .
>
> 8. John David Moore hereby agrees as allowed by Louisiana law *not to pursue any reduction in alimony support for the remainder of the three year term ending May 30, 2003* as ordered by this Court's

2

judgment dated July 10, 2000 as long as Estelle Martin Moore does not remarry, enter into open concubinage, or receive large sum of money substantial for support, unless John David Moore suffers from some unforeseen catastrophe, including but not limited to extreme illness, disability, or unemployment that would render it necessary to petition the court. John David Moore agrees not to pursue any reduction based upon assets and property acquired by Estelle Martin Moore as a result of this Agreement partitioning the community property between them.

(Emphasis added.)

On September 22, 2003, Estelle filed a rule seeking $1,500.00 in permanent periodic spousal support based upon allegations that "she is without sufficient means to support herself, and that she has no means of support at the present time." Neither the record nor the court minutes reflect the disposition of this rule.[1] However, in a subsequent rule for permanent spousal support that Estelle filed on May 4, 2004, she alleges that the previous rule "was ultimately denied by the court on November 3, 2003 for the failure of [Estelle] to prove her disability from engaging in gainful employment with medical evidence." John then filed a motion for summary judgment in response to Estelle's rule of May 4, 2004, arguing that Estelle had compromised her claim for spousal support in their agreement to partition community property. In support of his motion, John introduced the affidavit of his former attorney, who stated that spousal support was discussed and contemplated during the negotiations concerning the partition agreement with the intent that John would "pay the award set by the court without reduction absent extreme circumstances for the remainder of the term of thirty six months, which would then terminate the spousal support obligation." In opposition, Estelle filed her affidavit and that of her former attorney,

---

[1]Although the appellate record contains pleadings and court orders dating from December 2, 1999, when John filed for divorce, the record does not contain a judgment disposing of the rule that Estelle filed on September 22, 2003, and the minutes of court before October 2004 are not included.

in which they both stated that no discussion was ever held that contemplated that Estelle "would waive spousal support for and in consideration of properties received by virtue of the aforesaid property settlement agreement" and that it was never Estelle's intention to "contract away, convey, and/or waive rights to collect permanent spousal support."

After taking the matter under advisement, the trial court issued written reasons agreeing with John. Specifically, the trial court found that the affidavits submitted in support of and in opposition to summary judgment did not create a genuine issue of material fact, as the parties' agreement "clearly gave a full and complete general release to one another of **all claims** arising from the marital relationship." Estelle has appealed.

## Summary Judgment: Procedure

Estelle first argues that the instant matter was inappropriately decided on summary judgment. She cites La.Civ.Code art. 969(A), which provides: "Judgments on the pleadings and summary judgments shall not be granted in any action for divorce or annulment of marriage, nor *in any case where the community, paraphernal, or dotal rights may be involved in an action between husband and wife.*"[2] (Emphasis added.) For the following reasons, we disagree.

As explained in *Allen v. Allen*, 642 So.2d 202, 207 (La.App. 2 Cir. 1993), *reversed on other grounds*, 94-1090 (La. 12/12/94), 648 So.2d 359 (emphasis added), "Art[icle] 969(A) is a procedural safeguard ensuring each party the opportunity to

---

[2]BLACK'S LAW DICTIONARY (6th ed. 1990) defines "dotal" as: "Relating to the *dos* or portion of a woman; constituting her portion; comprised of her portion." "Dotal property" is further defined as: "In the civil law, in Louisiana, property which the wife brings to the husband to assist him in bearing the expenses of the marriage establishment. Extradotal property, otherwise called 'paraphernal property,' is that which forms no part of the dowry."

present evidence and have a full hearing *on all issues involving spousal property rights*." Thus, the court in *Allen* held that deciding the validity of a premarital contract was not appropriate on summary judgment because it was determinative as to whether community or paraphernal rights existed. *See also Loeb v. Loeb*, 252 So.2d 516, 519-20 (La.App. 4 Cir. 1971), in which the court explained: "The purpose of Code of Civil Procedure article 969 is to prevent collusive actions under motion for summary judgment in suits involving the rights of married women." The issue in *Loeb* was whether a suit to enforce an obligation to pay attorney fees that was included in a community property partition could be decided on summary judgment. Characterizing the suit as one for the collection of attorney fees rather than as one affecting spousal property rights, the court found that the matter could be decided on summary judgment.

Additionally, by its terms, Article 969 applies to "an action between husband and wife." Based upon this language, several cases have looked to whether the parties were married at the time the suit was instituted to determine whether Article 969 would preclude summary judgment. *See Fisk v. Mathews*, 525 So.2d 223 (La.App. 1 Cir. 1988); *Arnona v. Algiers Homestead Ass'n*, 431 So.2d 18 (La.App. 4 Cir.), *writ denied*, 437 So.2d 1155 (La.1983); and *Loeb*, 252 So.2d 516. One case that applied Article 969 where the parties were not married at the time suit was filed was subsequently criticized in *Fisk*, 525 So.2d 223. *See Juneau v. Hilton*, 384 So.2d 571 (La.App. 4 Cir. 1980).

Based upon the above, we find that Article 969 does not prohibit the use of summary judgment procedure in the present case, as Estelle's rule for spousal support

does not involve "community, paraphernal or dotal rights," and it was filed after the parties were divorced.

**Summary Judgment: Merits**

Estelle next argues that the trial court erred in granting summary judgment dismissing her spousal support claim based upon the release contained in the parties' community property partition agreement. She contends that a reading of the agreement in its entirety, and more particularly the section entitled "THE SCOPE OF THIS AGREEMENT," leads to the conclusion that it concerns only property claims. She also cites the absence of any reference to spousal support beyond the initial three-year term set by the trial court as evidence of the parties' intent that the agreement should not affect same. John argues that Estelle's current rule is covered by the unambiguous language that the agreement constitutes a compromise of all "claims arising out of the marital relationship, of any kind."

In its reasons for ruling, the trial court characterized the community property agreement as "clearly a transaction or compromise between the parties" that is governed by La.Civ.Code arts. 3071-3083. In *Brown v. Drillers, Inc.*, 93-1019, pp. 5-6 (La. 1/14/94), 630 So.2d 741, 747, the supreme court discussed the effect of a transaction and compromise as follows:

> LSA-C.C. Art. 3071 defines a compromise as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." LSA-C.C. Art. 3078 declares the effect of a compromise, providing that a compromise has the legal efficacy of a judgment, possessing "a force equal to the authority of things adjudged," and that a compromise "can not be attacked on account of any error in law or any lesion." LSA-C.C. Art. 3078; *see Salling Wiping Cloth Co. v. Sewell, Inc.*, 419 So.2d 112, 114 (La.App. 2d Cir.1982). Based on LSA-C.C. Art. 3078, a valid compromise can form the basis of a plea of res judicata.

6

The court in *Brown* further recognized that the "use of a motion for summary judgment based upon [a] release instrument [is] procedurally proper." *Id.* at 747, n. 7.

Concerning the interpretation of a transaction or compromise, the supreme court in *Brown* offered the following detailed analysis:

> LSA-C.C. Art. 3071 . . . provides that a compromise is a written contract. It follows that the compromise instrument is the law between the parties and must be interpreted according to the parties' true intent. It also follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.
>
> LSA-C.C. Art. 2046 sets forth a general rule of construction, providing that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no *further* interpretation may be made in search of the parties' intent." The underscored word "further" in this article signifies the true nature of contractual interpretation. The determination that the language contained in a contract is clear and explicit, in itself, involves an interpretive process. For that reason, LSA-C.C. Art. 2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all.
>
> LSA-C.C. Art. 3073 contains a supplementary rule of construction governing the interpretation of the operative language, and the determination of the scope, of a compromise agreement. LSA-C.C. Art. 3073 provides that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication. More precisely, LSA-C.C. Art. 3073 set[s] forth the following four factors to be considered in determining the scope of a compromise instrument:
>
>> [1] Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties,
>>
>> [2] whether it be explained in a general or particular manner,
>>
>> [3] unless it be the necessary consequence of what is expressed; and
>>
>> [4] they do not extend to differences which the parties never intended to include in them.
>>
>> . . . .

7

In applying the rule of construction set forth in LSA-C.C. Art. 3073, courts are guided by the general principle "that the contract must be construed as a whole and in light of attending events and circumstances." Thus, the intent which the words of the compromise instrument express in light of the surrounding circumstances at the time of execution of the agreement is controlling.

The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Louisiana courts, however, have crafted a special exception to the extrinsic evidence rule for compromise agreements based on an *in pari materia* reading of LSA-C.C. Art. 3073's provision that a compromise extends only to those differences the parties[] clearly comprehended and LSA-C.C. Art. 3079's provision that an error as to the subject matter in dispute is a ground to rescind a compromise.

*Moak* [*v. American Automobile Insurance Co.*, 242 La. 160, 134 So.2d 911 (1961)] stands for the proposition that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Following *Moak*, a long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Under that jurisprudential rule, the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.

Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule's application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts, applying LSA-C.C. Art. 2046's general rule of construction, have not hesitated to confine their analysis to the four corners of the instrument. *When, as in that instance, a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and thus summary judgment is appropriate.*

*Id*. at 748-50 (emphasis added) (citations omitted) (footnotes omitted).

Estelle argues that the agreement should be construed to apply only to property claims between the parties. However, we find that her interpretation would have us ignore language referring to all claims arising out of the marital relationship that appears *twice* in the section entitled "MUTUAL RELEASE," as well as the general release contained in the first paragraph of the section entitled "MISCELLANEOUS." The agreement states that it is "not restricted to community property" but "marital property of any nature whatsoever" and "claims arising out of the marital relationship, of any kind." That sentence continues, stating that it is the parties' intent that the agreement be "a full, complete and final settlement" with reference to six enumerated types of property claims and "all other claims of any nature with respect to the marital relationship." The concluding section includes a broader release of "all causes of action . . . whatsoever, in law or equity, which either of the parties ever had or now has against the other." The agreement also specifically refers to Estelle's spousal support claim, in paragraph eight of the "MISCELLANEOUS" section where John agrees not to seek a reduction in the amount set by the court in the absence of certain extraordinary circumstances.

Although we agree with Estelle that the agreement must be read in its entirety, the foregoing leads us to a different conclusion, namely, that the parties intended that the release apply to claims beyond their community property dispute. Evidence of this intent is found in the clear and concise language that the agreement is meant to be a complete settlement of "all other claims of any nature with respect to the marital relationship" and the reference to spousal support elsewhere in the agreement. The

9

trial court did not err in concluding that Estelle's spousal support claim is one of those claims.

## Decree

For the above reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assessed to Estelle Martin Moore.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-628

JOHN DAVID MOORE

VERSUS

ESTELLE MARTIN MOORE

COOKS, J., dissents.

Summary Judgement is not appropriate in this case. La. Code Civ. P. art. 969 (A). Further, the partition agreement's failure to include any specific reference to the wife's right to *future* spousal support while specifically limiting the husband's right to seek a reduction makes it ambiguous. The affidavits of the parties attorneys, involved in the drafting of the document, creates a genuine issue of material fact regarding the "meeting of the minds of the parties" on the spousal support issue.

1